EDWARD J. MURPHY *vs.* FRANK S. BERGIN ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, JS.

Argued February 8th—decided March 7th, 1934.

*Ernest L. Averill,* Deputy Attorney-General, with whom were *Warren B. Burrows,* Attorney-General, and *H. Roger Jones,* Assistant Attorney-General, for the appellants (defendants).

*John C. Blackall,* with whom was *William Hanna,* for the appellee (plaintiff).

*Louis Y. Gaberman,* with whom was *Glen W. Fox,* and, on the brief, *Stewart W. Dunning, amicus curiae.*

MALTBIE, C. J.   The Liquor Control Act, General Statutes, Cum. Sup. 1933, § 669b *et seq.,* had its origin in three Public Acts of the General Assembly of 1933, Chapters 140, 329 and 330.   The latter two were amendments of the first Act.   Chapter 330 contained a number of detailed changes not material to the question before us.   Chapter 329, however, dealt solely with the rights of druggists and druggist permits and is directly involved in this controversy.   The original file of the bill, and the journals of the House and Senate, show that the bill was received in the Senate on the last day of the session, under suspension of the rules, and was passed there and in the House without reference to any committee and without amendment.

Chapter 140 established the Liquor Control Commission and defined the various alcoholic liquors

within its scope. The definitions given of "alcohol," "spirits," "wine," "beer" and "alcoholic liquor" are sufficiently broad to include medicinal compounds, proprietary or otherwise, containing alcohol. See *State* v. *Gray,* 61 Conn. 39, 22 Atl. 675. The Act provided for the issuance of various classes of permits for the manufacture and sale of alcoholic liquor, as follows: Manufacturer permit; wholesaler permit; package store permit; hotel permit; restaurant permit; club permit; tavern permit; railroad permit; boat permit; and druggist permit. Each class of permit is dealt with in a separate section or sections of the Act, which define the acts permitted, and regulate the conduct of the business, under it. Of these, the sections directly pertinent to our inquiry are those which deal with the package store permit and the druggist permit.

The package store permit allowed the sale at wholesale or retail of alcoholic liquor, not to be drunk on the premises and only in sealed bottles and containers of not less than one quart or twenty-four fluid ounces capacity, except that in the case of beer the commission might prescribe the size of the containers. Another section of the Act provided that sales in places operating under package store permits were unlawful on the days of state or municipal elections, on Sundays, or on other days before seven a. m. or after six p. m. The druggist permit, dealt with in §§ 29 and 30 of the original Act, allowed the use of alcoholic liquor for compounding prescriptions, and its sale upon prescription, subject to certain regulations, and also the sale of alcohol or of proprietary medicinal compounds and preparations, put up separately in sealed packages, in the original unbroken containers, subject to certain restrictions as to the labels upon the containers and in accordance with regulations of the

commission; and this permit might be granted even if the drug store in connection with which it was to be used was in a town which had voted against the issuance of permits within its territory. No provision of the Act restricted the exercise of the right allowed under a druggist permit as to any particular days or hours, but it was provided that any pharmacist who sold alcoholic liquor to be drunk upon the premises should, upon conviction, forfeit both his druggist permit under the Act and also his pharmacist's permit. The fee fixed by the Act for a package store permit and a drug store permit was the same.

The provisions of the Act as to applications for permits, the conditions under which they were to be issued, prohibitions against the issuance of the permits to certain persons and for certain places, the procedure to be followed in obtaining them and the revocation of permits, were in general language, applicable, except in certain specified instances, to permits of all classes. The Act gave a right of appeal to the Superior Court to "any applicant" whose application for a permit or a renewal had been refused or whose permit had been revoked. This section of the law contained a provision as follows: "If said court shall decide, upon the trial of such appeal, that the appellant is a suitable person to sell alcoholic liquor, and that the place named in his application is a suitable place, within the class of permit applied for or revoked, and shall render judgment accordingly, a copy of such judgment shall be forthwith transmitted by the clerk of said court to the commission, and the commission shall thereupon issue a permit to such appellant to sell such alcoholic liquor at such place for the remainder of the permit year."

Chapter 329 amended Chapter 140 by adding certain definitions to the effect that the words "regis-

tered pharmacist" or "registered druggist" as used in the Act should mean any person licensed as such under the laws of this State to compound and dispense medicines upon prescription by a physician and actively engaged in the practice of that profession, and that the words "registered pharmacy" or "registered drug store" should mean a place registered as such by the pharmacy commission, and under the management of a registered pharmacist, the principal function of which was to compound physicians' prescriptions and to manufacture or sell drugs, medicines and allied products. It then amended §§ 29 and 30 of the original Act to read as follows: [29] "DRUGGIST PERMIT. A druggist permit may be issued by the liquor control commission, in its discretion, after the applicant shall have presented a certificate of fitness issued by the pharmacy commission, and the pharmacy commission shall have authority in the issuing of such certificate of fitness for this purpose. No druggist permit shall be issued covering a new drug store or a new location for an old drug store until both the pharmacy commission and the liquor control commission shall have been satisfied that a drug store at such location is necessary to the convenience and best interests of the public. A druggist permit shall allow the use of alcoholic liquors for the compounding of physicians' prescriptions and for the manufacturing of all U. S. P. and N. F. preparations and all other medicinal preparations unfit for beverage purposes, and shall allow the sale of all alcoholic liquors in containers of not more than one quart capacity, and shall forbid the drinking of such alcoholic liquors on the premises of any drug store. [30] SALES ON PRESCRIPTION. A registered pharmacy shall be allowed to fill the prescription of a licensed physician for alcoholic liquors at any time and without regard to the vote of

any town prohibiting the sale of such liquors, provided such prescription shall include the name and address of the person for whom it is prescribed, and shall be signed with his full name by the physician issuing such prescription. Such prescription shall be filled only once, and the person making a sale on such prescription shall write on the face thereof the number of such prescription and the date of the sale or delivery of such liquor, and shall keep such prescription on file and available at all reasonable times to the inspection of the commission."

The plaintiff is a registered pharmacist operating a registered pharmacy in Manchester. He applied to the Liquor Control Commission for a druggist permit under the Liquor Control Act, complying with the conditions established by the Act in connection with such an application. The commission denied the application upon the ground that it did not conform to a regulation it had promulgated as follows: "All registered pharmacists or registered drug stores as defined in paragraph 16 of § 2 of the Liquor Control Act are hereby classified as stores. The sale of alcoholic liquors in such stores other than on prescription of a licensed physician or in medicinal compound shall be under package store permits only." The commission did not pass upon either the suitability of the applicant to have a permit or the suitability of the applicant's pharmacy as a place in which to sell alcoholic liquor under a permit, but it was stipulated upon the appeal that if the court should find that a druggist permit rather than a package store permit should issue to the applicant, both person and place were suitable, and the trial court has so found. The trial court concluded that the regulation of the commission quoted was beyond its power to establish and that it could not refuse all druggist permits; and that it was

not necessary to pass upon the question whether or not the legislature could delegate to the commission discretionary powers to grant or withhold permits from a class of applicants such as druggists. The commission has appealed from the judgment of the trial court.

Under the original Act druggist permits were treated in the same way as were the other classes of permits. The whole plan of liquor control embodied in the Act makes it clear that the legislature intended that permits of each of the classes designated were to be issued by the commission, subject to the provisions of the Act and such regulations as the commission had the right to establish. Unless the commission had the power to refuse to issue permits of any of the classes designated as it might choose, a power the exercise of which would clearly violate the legislative intent, it could not refuse to issue any druggist permits at all, whether or not the applicant had met all the requirements of the Act and the proper regulations of the commission for such a permit. Indeed, the provision that if, upon an appeal from the refusal or revocation of a permit, the court should find that both the applicant and the place named in the application were suitable, the commission must issue a permit is conclusive of that intent. Under the original Act, certainly, the regulation promulgated by the commission, amounting as it does to a refusal to issue any druggist permits at all, would be clearly beyond its power.

Aside from the significance of the phrase in the amendment contained in Chapter 329, referring to the discretion of the commission, the principal changes made by the amendment as regards the sale of alcoholic liquor were, first, clearly to restrict druggist permits to registered pharmacists and registered

pharmacies, and, second, to permit those having such permits to sell alcoholic liquor otherwise than upon prescription or in proprietary compounds in the original package. The provisions of Chapter 140 as to the method of issuing permits and the like, and particularly those with reference to appeals, remained unchanged and were still applicable to druggist permits. Unless the words giving the commission discretion were intended by the legislature to place the issue of druggist permits upon an entirely different basis than other permits, it remained true that the commission could not decline to issue any such permits whether or not the applicant met the conditions established by or under the Act.

In the first place, one of the principal purposes of Chapter 329, as we have pointed out, was to extend the scope of druggist permits so as to allow the sale of alcoholic liquor for beverage purposes under them. The legislature, by that Act, evidently contemplated that there were to be, as an integral part of the plan of liquor control, permits to druggists which would allow such sales. A refusal by the commission to issue any such permits hardly coincides with the legislative intent which lay back of the amendment. Moreover, in considering the significance of the language used as embodied in the amending Act, we must scrutinize the whole law in its relation to the provisions of Chapter 140, and the first matter which strikes attention in reading § 29 is the phraseology of the first sentence, which we repeat in part: "A druggist permit may be issued by the liquor control commission, in its discretion, after the applicant shall have presented a certificate of fitness issued by the pharmacy commission." If the intent of the legislature had been to give to the commission a discretion whether or not to issue any druggist permits, it would hardly have

chosen that language; the words clearly imply the exercise of a discretion upon the particular application before the commission, for it is to be exercised only "after the applicant" has presented the necessary certificate from the pharmacy commission. Again, had the legislature intended that the commission might refuse all druggist permits, it would not have left unchanged the provision as to appeals from the refusal or revocation of permits, which extend to "any applicant for a permit" and provide for the issuance of a permit if the applicant is a suitable person and the place named in the application is a suitable place. These provisions must be taken to apply to druggist permits as well as to any others; a druggist refused a permit may appeal to the Superior Court and, if he does, and the court finds that he is a suitable person and the place named in his application is suitable, unless we are to make an exception to this section of the Act wholly unwarranted by its terms, the commission must issue a permit to him, any regulation made by it to the contrary notwithstanding.

Moreover, there are practical difficulties in the way of placing the interpretation upon the Act which the commission has embodied in its regulation. The sale of many medicinal compounds, such as were mentioned in the original Act, would be within the scope of the Act, as we have pointed out. The effect of the regulation of the commission requiring druggists to take out package store permits, with the restrictions as to hours and days provided under such permits, would prevent the sale of such compounds on any day before seven a. m. or after six p. m., or on Sundays or election days; and as sales under package store permits cannot be made in containers of less than one quart or twenty-four fluid ounces capacity, drug stores could not, if permitted to operate only un-

der such permits, lawfully sell such compounds in containers of any less capacity. The commission, by a regulation, could not allow, under a package store permit, the sale or use of alcoholic liquor contrary to the terms of the statute governing such permits, or allow such sale or use as was lawful only under a druggist permit, in the absence of such a permit. We cannot believe that the legislature intended such inroads upon the ordinary method of conducting business in registered pharmacies as the interpretation of the Act embodied in the regulation in question would produce.

It is apparent that the amendment of the Act we are considering did not have the careful consideration it would have had, had it been offered at an earlier day in the session of the legislature and been referred to an appropriate committee for hearing and report. For example, the amendment to § 30 which permits a registered pharmacy to fill prescriptions calling for the use of alcoholic liquor "at any time and without regard to the vote of any town prohibiting the sale of such liquors," does not expressly state whether this power may be exercised without the necessity of procuring a druggist permit, while there is a provision of the original Act not amended and now § 683b, that whenever any town shall have voted upon the question of issuing liquor permits within its territory, any permit granted in it not in accordance with the vote should be void "except manufacturer permits, railroad permits and druggist permits." This situation might present a question whether sales for beverage purposes are allowable under a druggist permit in a town which had voted against the issuance of permits, but that question it is not now necessary to determine. Other like questions are suggested by a study of the Act and the amendment and it is to be assumed that the next

legislature will give further consideration to the matter and in the light of experience under the law more definitely express its intent as regards the ambiguities now existing.

The Act nowhere expressly provides that the commission shall issue permits nor, aside from some specific prohibitions, does it point to any standard which the commission is to apply in determining whether or not to issue such a permit in a particular case, but that the commission does have the power to issue permits and that it may, in a proper case, refuse to issue one to a particular person or for a particular place, is clearly implied in the plan of the Act and in its various provisions. Moreover, as the basis upon which the court is to act upon an appeal to it from the refusal or revocation of a permit cannot be assumed to be different than the basis upon which the commission acts upon the application, the provisions of the section dealing with appeals, that upon a finding by the court of the suitability of the person and the place a permit is to issue, clearly imply that these are the basic considerations upon which the commission must act, in so far as the matter is not controlled by the specific requirements of the Act or of any proper regulation the commission may make.

The term "suitability" as used in connection with the control of the liquor traffic became familiar under our statutes as they existed before the adoption of the Eighteenth Amendment to the United States Constitution; see General Statutes, Rev. 1918, § 2731; *Smith's Appeal*, 65 Conn. 135, 138, 31 Atl. 529; it was recognized that the term was a broad one and that in determining whether or not a person was suitable to have a liquor license or the place in which it was to be exercised was suitable, the county commissioners exercised a discretion. *Malmo's Appeal*, 72 Conn. 1, 43

Atl. 485; *Moynihan's Appeal*, 75 Conn. 358, 364, 53 Atl. 903; *Farrell's Appeal*, 85 Conn. 701, 703, 84 Atl. 102. Had the provisions of Chapter 329 been incorporated in the original Act, it might perhaps have been more open to question whether, by its explicit reference to the discretion of the commission in connection with druggist permits, and its omission in the provisions dealing with other permits, the legislature intended that the former should be dealt with upon a different basis. Adopted, as the amendment was, as an independent piece of legislation, without reference to or hearing by any committee of the legislature, it is reasonable to assume that the use of the words "in its discretion" in connection with the power of the commission to issue druggist permits merely gave expression to the underlying intent of the legislature as to its powers in reference to all classes of permits. Also a definite reason for the use of these words, suggested by the plaintiff, is a reasonable one, that is, that the purpose of the legislature was to make clear that the issuance of a certificate of fitness by the pharmacy commission, to a registered druggist would not of itself entitle such druggist to a permit under the Liquor Control Act as a matter of right, but that it was still for the commission to determine for itself, in the exercise of a proper discretion, whether in a particular case the permit should be issued. See *Batters* v. *Dunning*, 49 Conn. 479.

We are not here concerned with the question whether the legislature might, under constitutional limitations, have given the commission power to determine whether or not to issue any druggist permits. Reading the Act as a whole, the legislative intent that the commission should exercise its discretion in regard to each particular application for a druggist permit before it, is clear. The regulation adopted by the com-

mission, in effect refusing to issue any such permits, was beyond its power. The stipulation of the parties and the finding of the court that the plaintiff was a suitable person and the place named in his application a suitable place, determines the right of the plaintiff to receive such a permit, unless the provisions of the law as to druggist permits are invalid.

That the legislature might vest in the Liquor Control Commission a discretion to determine whether or not particular applicants were suitable persons to receive permits and whether or not the places in which such permits were to be exercised were suitable places, under the restrictions in the Act and such regulations as it might lawfully make, is not open to question. *State* v. *Wilcox,* 42 Conn. 364, 371; *Hopson's Appeal,* 65 Conn. 140, 145, 41 Atl. 531; *Malmo's Appeal,* 72 Conn. 1, 5, 43 Atl. 485. The constitutional right of the legislature to provide for the control of the use or sale of alcoholic liquor by pharmacists in the exercise of their business, in a manner similar to that embodied in the Liquor Control Act, has been expressly upheld by this court. *State* v. *Gray,* 61 Conn. 39, 22 Atl. 675. The fact that under druggist permits sales of alcoholic liquor may be made without restriction as to hours or days, whereas sales under package store permits are restricted in both ways, does not bring about an unlawful discrimination. Those applying for druggist permits are subjected to an additional requirement not applicable in the case of other permits, tending to restrict such permits to persons of a peculiar responsibility, because they must present a certificate of fitness from the pharmacy commission before a permit may issue. Drug stores, by keeping open long hours and on all days serve a very real public need. The legislature might reasonably conclude that it would be unwise to restrict them as to the hours

or days during which they might be open or might dispense prescriptions or sell medicinal compounds containing alcoholic liquor; and it might well deem that it would be impracticable or unnecessary to separate their functions in serving such a need from the selling of alcoholic liquors intended for beverage purposes. We cannot say that the legislature did not have a reasonable basis for the distinction it made in the exercise of rights under the two classes of permits, and we cannot therefore hold that it did not have the power to make that distinction. *Norwich Gas & Electric Co.* v. *Norwich,* 76 Conn. 565, 583, 57 Atl. 746; *State* v. *Hurlburt,* 82 Conn. 232, 235, 72 Atl. 1079; *Silver* v. *Silver,* 108 Conn. 371, 378, 143 Atl. 240; *State* v. *Cullum,* 110 Conn. 291, 295, 147 Atl. 804.

There is no error.

In this opinion the other judges concurred.