70

District Court, D. Connecticut.
May 16, 1934.

Warren B. Burrows, Atty. Gen. of the State of Connecticut, Ernest L. Averill, Deputy Atty. Gen., and William H. Nelson, Asst. Atty. Gen., for defendants.

Thomas J. Spellacy, of Hartford, Conn., and Nathan April, of New York City, for plaintiff.

Henry Greenstein, of Bridgeport, Conn., and Louis Evans, of New Haven, Conn., for interveners.

THOMAS, District Judge.

The plaintiff, a permittee under a package store permit, issued pursuant to the provisions of the Liquor Control Act of the state of Connecticut (section 688b, Cumulative Supplement 1931–1933 of the General Statutes of Connecticut, p. 295), seeks an injunction restraining the enforcement of the provisions of that act contending that its provisions relating to druggist permits are discriminatory and that by reason of such discrimination, he is being damaged and deprived of equal protection of the law, and that enforcement will deprive him of his property, without due process of law and abridge his privileges and immunities as a citizen of the United States in contravention of the Constitution of the United States.

The bill charges that more than $3,000 is involved and that the controversy arises under the Constitution and laws of the United States. It alleges that the plaintiff was granted a package store permit to sell liquor under the Liquor Control Act (section 688b) and that he had, prior to the commencement of the action, an investment of over $18,000

in alcoholic liquors and average gross retail sales of $1,800 per week and an average wholesale business of $8,000 per week. But since the Supreme Court of Errors of the state of Connecticut (Murphy v. Bergin, 118 Conn. 249, 171 A. 433) declared that druggist permits were not subject to similar restrictions under the Liquor Control Act, his wholesale business has been practically eliminated and his retail sales dropped to $1,100 per week. These losses, he charges, are suffered by reason of unfair competition directly due to the unreasonable discrimination caused by the provisions of the act regarding druggist permits.

The Liquor Control Act went into effect May 10, 1933; it was amended June 7, 1933, so as to enlarge the privileges flowing from the issuance of druggist permits. Plaintiff's permit was issued to him May 10, 1933.

The act contains seven articles (section 669b et seq.); the first embodies a definition of terms; the second creates the administrative body charged with the enforcement of the act, a liquor control commission, and defines its powers and jurisdiction; the third embodies the local option law; the fourth groups various types of licenses or permits for the manufacture and sale of alcoholic beverages and defines and limits the powers and restrictions placed upon each class of permit; the fifth relates to the seizure of alcohol contraband; the sixth embodies a scheme of penalties for violations of the law and outlines procedure for enforcement; the seventh contains a repeal clause and provides for taxation. Thus a comprehensive scheme for the regulation and control of the manufacture, purchase, and sale of alcoholic liquor within the state as well as for raising revenue therefrom has been enacted.

Section 685b provides:

"*Classes of Permits.* Permits shall be subject to the regulations of the commission and the provisions of this chapter and shall be of the following classes: (a) Manufacturer permit, (b) wholesaler permit, (c) package store permit, (d) hotel permit, (e) restaurant permit, (f) club permit, (g) tavern permit, (h) railroad permit, (i) boat permit, (j) druggist permit."

Section 688b provides:

"*Package Store Permit.* A package store permit shall allow wholesale or retail sale of alcoholic liquor in this state not to be drunk on the premises, such sales to be made only in sealed bottles or other containers of not less than one quart or 24 fluid ounces capacity, except that as to beer the size and capacity of the bottles or containers shall not be smaller than as provided in regulations made by the commission."

Section 697b provides:

"*Druggist Permit.* A druggist permit may be issued by the liquor control commission, in its discretion, after the applicant shall have presented a certificate of fitness issued by the pharmacy commission, and the pharmacy commission shall have authority in the issuing of such certificate of fitness for this purpose. No druggist permit shall be issued covering a new drug store or a new location for an old drug store until both the pharmacy commission and the liquor control commission shall have been satisfied that a drug store at such location is necessary to the convenience and best interests of the public. A druggist permit shall allow the use of alcoholic liquors for the compounding of physicians' prescriptions and for the manufacturing of all U. S. P. and N. F. preparations and all other medicinal preparations unfit for beverage purposes, and shall allow the sale of all alcoholic liquors in containers of not more than one quart capacity, and shall forbid the drinking of such alcoholic liquors on the premises of any drug store."

Section 670b provides:

"(15) The words 'registered pharmacist' or 'registered druggist' mean any person who is licensed as a registered pharmacist under the laws of this state to compound and dispense medicines prescribed by physicians and who is actively engaged in the practice of such profession in this state.

"(16) The words 'registered pharmacy' or 'registered drug store' mean a place registered as such by the pharmacy commission of this state, and under the management of a registered pharmacist, the principal function of which is to compound physicians' prescriptions and to manufacture and sell drugs, medicines and allied products.

"(17) The words 'pharmacy commission' mean the commission appointed by the governor of this state to license as registered pharmacists and registered assistants such applicants as fulfill the legal requirements for such license, and to license and control as registered pharmacies stores that fulfill the legal requirements for such license."

Section 683b provides:

"*Liquor Permit Contrary to Vote Void.* Whenever any town shall have voted upon the question of liquor permit as aforesaid, any liquor permit granted in such town which is not in accordance with such vote shall be

void except manufacturer permits, railroad permits and druggist permits."

Section 698b provides:

"*Sales on Prescription.* A registered pharmacy shall be allowed to fill the prescription of a licensed physician for alcoholic liquors at any time and without regard to the vote of any town prohibiting the sale of such liquors, provided such prescription shall include the name and address of the person for whom it is prescribed, and shall be signed with his full name by the physician issuing such prescription. Such prescription shall be filled only once, and the person making a sale on such prescription shall write on the face thereof the number of such prescription and the date of the sale or delivery of such liquor, and shall keep such prescription on file and available at all reasonable times to the inspection of the commission."

The discrimination claimed by the plaintiff in the case of a package store permittee is that he may not sell liquor in any town which has voted dry, even if the permit were obtained before the town so voted; and the license becomes void after the town has voted dry. He may sell in sealed bottles or other containers of not less than one quart or twenty-four fluid ounces capacity; he must not sell in contravention of zoning ordinances of any town and must not sell in any permit town where it is apparent that the party applying for it is seeking to obtain patronage from the adjoining no-permit town. The hours of sale are from 7 a. m. to 6 p. m.; no Sunday sales, nor may he sell on any day of any state or municipal election and further restrictions may be imposed by municipal ordinances. He is subject to further restrictions as to hours of sale by regulations of the liquor control commission. He may not employ minors to handle or deliver liquor except in a grocery store in which the handling of alcoholic liquor is incidental to the grocery business; he may not deliver liquor in "no permit towns"; he must sell alcoholic liquor in sealed containers. But the druggist permittee may sell liquor anywhere, inclusive of dry towns; he must not sell in larger than quart containers; he may sell in pints or smaller containers, but regardless of the size of containers, he may sell in unlimited quantities so long as individual containers do not exceed the quart size. He may sell regardless of zoning ordinances. He is not restricted in selling or seeking patronage from adjoining no-permit towns. He has no restrictions as to hours of sale and may sell on Sunday or on week days, including election days. He is not subject to any restrictions of municipal ordinances nor is he subject to possible further restrictions of the liquor control commission. He may employ minors. He is not obliged to sell in sealed containers. And apparently under the provisions of section 698b, even without any druggist permit, a registered pharmacy may sell liquor upon a physician's prescription. But as to this latter point, it must be noted that the opinion of the Supreme Court in Murphy v. Bergin, 118 Conn. 249, 171 A. 433, appears to have left the question open, and in the opinion by the same court in the case of State of Connecticut v. Faro (March term, 1934) 118 Conn. 267, 171 A. 660, there is nothing that definitely indicates that sales of liquor by registered pharmacies upon physician's prescription, even without a druggist permit, is illegal. Consequently, for all purposes of the present case we assume, without deciding, that registered pharmacies may sell on prescription, even without a druggist permit.

■ It was competent for the Legislature, in the exercise of the police power belonging to the state, to prohibit entirely or to authorize, upon such conditions as it may impose, the sale of intoxicating liquors. La Croix v. County Commissioners of Fairfield County, 50 Conn. 321, 47 Am. Rep. 648. The rule was well stated in the La Croix Case,

" * * * If anything can be settled by legal authorities, the doctrine is too well established to be longer called in question, that a license of this character, whether revocable in terms or not, is neither a contract nor property in any constitutional sense, but is subject at all times to the police powers of the state government."

See State v. Stanton's Liquors, 38 Conn. 233. In the License Cases, 5 How. 504, 577, 12 L. Ed. 256, Chief Justice Taney said:

"And if any State deems the retail and internal traffic in ardent spirits injurious to its citizens, and calculated to produce idleness, vice, or debauchery, I see nothing in the constitution of the United States to prevent it from regulating and restraining the traffic, or from prohibiting it altogether, if it thinks proper."

In Crowley v. Christensen, 137 U. S. 86, 11 S. Ct. 13, 15, 34 L. Ed. 620, it was said, referring to the requirements of a license to sell liquors, that restrictions may be imposed as to conditions of sale, and:

"It is a question of public expediency and public morality, and not of federal law. The police power of the state is fully compe-

tent to regulate the business—to mitigate its evil, or to suppress it entirely. There is no inherent right in a citizen to thus sell intoxicating liquors by retail; it is not a privilege of a citizen of the state or of a citizen of the United States. As it is a business attended with danger to the community it may, as already said, be entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils. The manner and extent of regulation rest in the discretion of the governing authority. That authority may vest in such officers as it may deem proper the power of passing upon applications for permission to carry it on, and to issue licenses for that purpose. It is a matter of legislative will only."

█ The highest court of the state of Connecticut, in Murphy v. Bergin (February term, 1934) 118 Conn. 249, 171 A. 433, 436, construing this very amendment to the act relative to druggist permits, held that it was not unreasonably discriminatory as to package store permits.

Nor does it appear that there is an illegal discrimination against the plaintiff as a package store permittee, under the terms of the act, in view of the amendment which enlarged the privileges pertaining to drug store permits. The Legislature of the state might reasonably have thought that the stores being of different classes, the sale of liquor by each should be upon a different basis and that there should be two classes of permits. It could make a distinction between them. There are differentiating facts between the two classes of permittees which reasonably call for different rules of conduct. The matter of personal fitness of the two classes of permittees and the degree of personal responsibility which the law should impose upon them and the severity as to the personal and business consequences resulting to them from violations of their permits, were all subjects for the Legislature to consider. The question of public necessity or public need also enters. The primary purpose of a drug store is the dispensing of drugs and medicines, some of them necessarily containing alcoholic liquor. In performing such a function for long hours daily and on Sundays and holidays, it may well be that the Legislature considered that drug stores serve a public need, and further considered that it was either impractical or, because of the high personal qualifications of registered pharmacists, unnecessary to differentiate between the hours within which they might sell for bever-

age purposes and the hours within which they might sell for medicinal purposes. There is not the same need for package stores to keep open. They sell for beverage purposes only. The requirements regarding the size of containers for a "package" store might well differ from those obtaining in the case of a drug store. In many of the package stores nothing is sold but liquor, whereas the druggist does not and could not restrict himself to the sale of liquor to the exclusion of the sale of drugs. The differing bases offer sufficient reason for the prohibition, in the case of the package store, against sale on election days. Druggist permits may be issued only to registered pharmacists whereas package store permits may be issued to any one, not necessarily the owner of the business but one associated in the business, as an agent or employee. Pharmacists are registered under the laws of Connecticut (chapter 160, General Statutes, Revision of 1930 [section 2820 et seq.]). They must file certificates of fitness from the pharmacy commission before permits may issue. This signifies that such permits can be issued only to persons of considerable educational attainment and intelligence with a correspondingly high judgment and sense of responsibility. The same does not necessarily apply to a package store permittee. Indeed, there is no requirement that the package store permittee shall be in direct charge of the management of his store. And note may be taken of the fact that the liquor business of a drug store is a small part of its business. If the druggist violates his permit by selling liquor to be drunk on the premises (section 735b), he forfeits both his druggist's permit and his pharmacist's license, and this is so whether he sells through his agent or employee. But in the case of a package store permittee, his only loss is the loss of his liquor permit; it does not deprive him of his right to carry on an associated business. Underlying these rules for the conduct of persons engaged in the traffic of liquors is the apparent desire to forbid the return of the saloon and drinking upon the premises of the seller.

It seems to us wholly reasonable to believe that the legislative intent in withholding from package stores the right to make sale of liquor daily after 6 p. m., and on Sundays and election days, and also the right to sell in quantities less than a quart, was based upon an apprehension that sales at such times and in such small amounts might lead the package stores, or some of them, to degenerate into something resembling the old-fash-

74

ioned saloon, notwithstanding the legislative prohibition of sales for consumption on the premises. Such an apprehension would not necessarily have equal application to sales under druggist permits. For the high personal qualifications requisite to obtain a pharmacist's license and the risk of forfeiting the pharmacist's license as well as the druggist permit in the event of violation by selling for consumption on the premises, furnished additional safeguards against the evil which the Legislature envisaged.

These and other considerations might well have influenced the Legislature in establishing the basis upon which it would grant permits and the limitations of such permits to each class. In Murphy v. Bergin, supra, the court considered a refusal of the liquor control commission to issue a druggist permit to a suitable person. The court held that this was not within its power and said:

"The commission, by a regulation, could not allow, under a package store permit, the sale or use of alcoholic liquor contrary to the terms of the statute governing such permits, or allow such sale or use as was lawful only under a druggist permit, in the absence of such a permit. We cannot believe that the Legislature intended such inroads upon the ordinary method of conducting business in registered pharmacies as the interpretation of the act embodied in the regulation in question would produce."

■ Under the state court decision, it is necessary for a druggist to have a druggist permit in order to sell alcoholic liquor when used in medicinal or proprietary compounds. No other class of permit is provided for by the Legislature in the Liquor Control Act to meet the requirements of a druggist. It well may be that the Legislature considered that there was a greater public need for the sale of alcoholic liquor for medicinal purposes than for beverage purposes. Indeed, beyond dispute, it lay within the power of the Legislature wholly to prohibit the sale of alcoholic liquor. By the same token, having once authorized the sale of liquor under package store permits, it could at any time by further legislation curtail the privileges carried by said permits or indeed wholly abolish the permits without invading any of the constitutional rights of the plaintiff. To be sure, even in its control of the liquor traffic, the Legislature could not resort to classifications that were wholly arbitrary and without any reasonable relation to the public welfare. But the grounds for distinction between the package store and druggist permittees convince us that there is no basis here for the claim that the classification of the Legislature now under consideration is arbitrary, or deprives the plaintiff of any constitutional right. The method and means of regulation and control of the liquor business within the state is entirely within the powers of the state Legislature without interference from other departments of government, state or federal, at least in the absence of any arbitrary classification which would invade the constitutional rights of the plaintiff. O'Gorman & Young v. Hartford Insurance Co., 282 U. S. 251, 51 S. Ct. 130, 75 L. Ed. 324, 72 A. L. R. 1163; Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 S. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160.

■ A distinction made by a Legislature is not arbitrary if any state of facts reasonably can be conceived which would sustain it and the existence of that state of facts at the time the law was enacted will be assumed. Rast v. Van Deman & Lewis, 240 U. S. 342, 36 S. Ct. 370, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455; Noble v. Carlton (D. C.) 36 F.(2d) 967.

The claim of an illegal discrimination arising from the fact that by the provisions of section 705b, druggist permits, alone of all permits, are exempted from the operation of zoning ordinances, we likewise find to be without substance. For section 697b provides expressly that "no druggist permit shall be issued covering a new drug store or a new location for an old drug store until both the pharmacy commission and the liquor control commission shall have been satisfied that a drug store at such location is necessary to the convenience and best interests of the public." Moreover, the exemption of section 705b is expressly limited to "druggist permits." Drug stores are not thereby exempted from the operation of zoning ordinances.

■ It is indeed difficult for us to fathom the legislative thought underlying the provisions of section 683b, whereby permits in the towns voting "dry" shall become void "except manufacturer permits, railroad permits and druggist permits." Why should the Legislature extend to the towns the privilege of local option, but apparently couple with that privilege the limitation that under druggist permits the sale of liquor even for beverage purposes may be continued? However, our inability to answer the question does not imply that the plaintiff or others similarly circumstanced have been subjected to an unreasonable discrimination. For local option is not a right of Connecticut towns; it is rather a

privilege lying wholly in the gift of the General Assembly. As such, it could have been wholly withheld without any constitutional conflict. Likewise, without violence to the Federal Constitution, it might be granted—as appears to have been the case here—in a limited degree. However, the Supreme Court of the state in the Murphy Case contented itself with pointing .out the apparent inconsistency and withheld all expression as to the construction and effect of section 683b. We do likewise. For it was conceded on argument that no town has yet voted dry. Indeed, under the state election laws, no opportunity to vote on local option has arisen since the passage of the legislation now under consideration. Certainly the plaintiff has not been injured as yet, and may never be injured, by any discrimination resulting from this section.

Moreover, it must be remembered that the features of the druggist permit to which the plaintiff objects were not a part of the original enactment, but were grafted thereon by amendment. If the original act is .constitutional, and ) serious claim is made that it is not, its validity could not be impaired by the subsequent adoption of what was in form an amendment—even though in legal effect a nullity. Eberle v. Michigan, 232 U. S. 700, 34 S. Ct. 464, 58 L. Ed. 803.

Thus the obvious commercial inequalities resulting from the legislation under consideration, upon the strength of which the temporary restraining order was deemed advisable in order to raise the issues here considered and decided, after able arguments and upon considerable study are seen to be without force sufficient to justify granting the application for injunction.

It is alleged in the bill that it is the intent to enforce the provisions of the Liquor Control Act by resorting to its penal and criminal measures. This allegation of the bill is admitted by the defendants. Considering the allegations of the bill and the stipulation of the parties, it thus appears that prosecutions and reprisals are threatened against package store permittees for alleged violations during the pendency of the temporary restraining order. In view of this it is appropriate to suggest that there be no prosecutions or reprisals against the plaintiff and all intervening permittees where offenses are alleged to have been committed during the pendency of the temporary restraining order. City of Marysville v. Cities Service Oil Co., 133 Kan. 692, 3 P.(2d) 1060; Ex parte Young, 209 U. S. 123, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; and State of Minnesota v. Chicago, M. & St. P. Ry. Co., 130 Minn. 144, 153 N. W. 320, L. R. A. 1916B, 764.

The motion to dismiss the bill has also been considered and will be denied to await any further proofs the plaintiff may produce at a trial of the merits if one is desired. If no further evidence is offered and the plaintiff rests on the stipulation submitted, the bill will be dismissed on the merits, not because of want of jurisdiction.