LAUREL BEACH ASSOCIATION ET AL. v. JOSEPH GILLI ET AL.

COURT OF COMMON PLEAS    NEW HAVEN COUNTY    FILE NO. 37113

Memorandum filed April 22, 1947.

*Bronson, Rice & Lyman,* of New Haven, for the Plaintiffs.

*Hewes & Awalt,* of Hartford, for the Defendants other than the Liquor Control Commission.

*Pasquale Vioni,* Assistant Attorney General, for the Defendant Liquor Control Commission.

FITZGERALD, J. The paintiffs are the Laurel Beach Association, described in the writ as a municipal corporation specially chartered by the General Assembly and located in the town of Milford, and three owners of land in Milford at Laurel Beach. The defendants are Joseph and Lydia Gilli, who own or have an interest in the Hotel Elsmere premises located at Laurel Beach, Andrew Pappas, who has had issued to him a hotel liquor permit relating to the Hotel Elsmere with a certificate of substitution in the name of Joseph Gilli, and the members of the liquor control commission of Connecticut, who issued the permit in question and will hereinafter be referred to as the commission.

In this action the plaintiffs, among other things, seek to enjoin the use of the aforesaid hotel liquor permit issued by the commission on or about August 29, 1946. On March 10, 1947, the case on its merits was submitted to the court on a stipulation of facts agreed upon by counsel together with documentary exhibits attached thereto. The stipulation has proven extremely helpful to the court in the analysis of the problem presented and will make unecessary a detailed discussion of the facts. Six questions have been propounded by counsel as the controlling questions arising out of the action and upon the stipulated facts. The answer to the first question is deemed decisive of the case and, in the court's opinion, obviates a direct answer to four of the five remaining questions stated. This question

reads: "Did the Liquor Control Commission have the power to grant the hotel liquor permit pertaining to the premises known as Hotel Elsmere?"

Counsel for the plaintiffs and for the defendants other than the commission have filed able briefs on all questions presented. The commission relies upon the opinion of the attorney general's office addressed to it, as reported in the Connecticut Law Journal of September 9, 1946, in resisting the claims of plaintiffs on the questions stated.

In the discussion that follows the court will only refer to such of the stipulated facts as will be required to indicate the basis of its conclusion that the initial and decisive question propounded should be answered in the negative.

In 1899 the General Assembly adopted a special act (13 Spec. Laws 129 et seq.) incorporating the Laurel Beach Association. Section 1 thereof reads: " That all of the present and future owners of land within the limits hereinafter specified, in the locality known as Laurel Beach, in the Town of Milford, New Haven County, are, while they are owners of such land, hereby constituted a body politic and corporate by the name of The Laurel Beach Association, and by that name they and their successors shall be a corporaton in law, and shall be vested with and possess the powers hereinafter specified." Section 9 thereof reads: "No license to sell spirituous and intoxicating liquors within said limits shall be granted to any person without the consent of said association." In 1919 the General Assembly amended the charter in various respects (18 Spec. Laws 244), but in only one respect material to the problem presented. This amendment relates to § 9, which was made to read; "No license to sell spirituous and intoxicating liquors within said limits shall be granted to any person."

The court has reached two conclusions which warrant a negative answer to the initial and decisive question:

(1) The General Assembly in adopting the present Liquor Control Act in 1933 and in the various amendments thereto to date has not repealed either (a) expressly or (b) by implication § 9 of the charter of the association as amended in 1919.

(2) Section 634h(5) of the 1945 Supplement to the General Statutes in any event controls the answer to the initial question and requires a negative answer thereto.

As to conclusion (1)a: See the act generally and the amendments thereto commencing with the Supplement of 1935 through the supplement of 1945. Nothing contained in the opinions in the cases of *Murphy* v. *Bergin,* 118 Conn. 249, and *State* v. *Faro,* 118 Conn. 267, is deemed inconsistent with this conclusion.

As to conclusion (1)b: " 'A special and local statute, providing for a particular case, or class of cases, is not partially repealed or amended, as to some of its provisions, by a statute general in its terms, provisions, and applications, unless the intention of the legislature to repeal or alter the particular law is manifest; although the terms of the General Act would, taken strictly, and but for the special law, include the case or cases provided for by it.' *Matter of Commissioners of Central Park,* 50 N. Y. 493, 497. Where a special charter is followed by general legislation on the same subject, which does not in terms, or by necessary construction, repeal the particular grant, 'the two are to be deemed to stand together: one as the general law of the land, the other as the law of the particular case.' *State* v. *Stoll,* 17 Wall. 425, 436." *New York, N. H. & H. R. Co.* v. *Bridgeport Traction Co.,* 65 Conn. 410, 429; see also *State ex rel. Wallen* v. *Hatch,* 82 Conn. 122, 124; and the scope of the comment in. *Hartford* v. *Hartford Theological Seminary,* 66 Conn. 475, 484-485. The Pennsylvania cases of *Seifried* v. *Commonwealth,* 101 Pa. 200 and *Murdock's Petition,* 149 Pa. 341, bearing a marked factual analogy in many essential respects to the one at bar, particularly merit citation at this point.

As to conclusion (2): § 634h of the 1945 Supplement reads, so far as pertinent to the question under consideration: "The commission may . . . refuse to grant permits for the sale of alcoholic liquor if it has reasonable cause to believe: . . . (5) that there is any other reason as provided by state or federal law or regulation which warrants such refusal." Legally speaking, the legislature in 1899 conferred a legislative charter upon the association by special act. See McQuillin, Municipal Corporations (2d Ed.) § 341. The ordinary dictionary definitions of a "charter" and a "regulation" are sufficiently comprehensive in scope to come within the legislative intent by the use of the words "state . . . law or regulation" appearing in the statute. See Webster's New International Dictionary (2d Ed.) for standard definitions of the specific words. It is

reasonable to suppose, and may be conclusively presumed, that when the legislature enacted the 1945 amendment to the Liquor Control Act the kind of state law or regulation it had in mind was its earlier special act conferring a charter upon the association and the limitation or restriction therein respecting the sale of liquor within the territorial limits of Laurel Beach.

In passing, it is deemed significant to note that in the deed of the Gillis' predecessor in title to the hotel property it is therein recited that the premises conveyed are "the same being subject to all the provisions of the charter of the Laurel Beach Association;" and that in the deed to Joseph J. Gilli it is re-cited that the premises are subject to "conditions and restrictions as mentioned in Milford Land Records, Volume 86, Page 217." As to restrictions in the deeds pertaining to other property located at Laurel Beach, see stipulation, paragraph 7. The fact that alcoholic liquor was sold on the hotel premises pursuant to permit prior to 1919 is deemed of no consequence. Section 9 of the charter at that time provided for "the consent of said association," and the implication in the stipulation is that such consent at that time had been given by the association for the sale of liquor on the premises. The National Prohibition Act intervened and had its day for a substantial period thereafter. It is the scope and effect of the 1919 amendment to § 9 of the charter — "No license to sell spirituous and in-toxicating liquors within said limits shall be granted to any per-son" — with which the case is presently concerned, and not its unamended and original content. So also the fact that the town of Milford, of which Laurel Beach is a subdivision, has neither voted to bar liquor outlets nor has adopted any zoning ordinances relating to the districting or regulating of outlets since the country and the state went off the dry standard is likewise deemed of no consequence. That Laurel Beach may not constitute a town within the technical meaning of the word and as that word is doubtless used in the Liquor Control Act is not deemed to militate against the conclusions herein reached.

Mr. Lyman in his brief for the plaintiffs has stressed certain points of argument which merit quotation: "The Act is very solicitous that no license be issued unless every reasonable ground of objection is obviated. It has demonstrated a pro-gressive solicitude by the number of amendments to tighten the requirements . . . The Act has been amended by every legis-

.lature since its original enactment in 1933, and always with an increasing recognition of local desires and an increasing effort to lay down extensive controls rather than to ease the existing ones . . . Section 634h·laid down five new rules for discretionary refusal, including the observance of state and federal laws or regulations other than the Act. The nature of the five rules is such as to suggest that they are practically mandatory . . . This whole legislative history and analysis demonstrates clearly an intent to favor local desires. It certainly is not a demon·stration of a clear intent to repeal all existing laws on the sub·ject any more than the comprehensive liquor laws in force from 1899 to 1919 repealed the Laurel Beach charter . . . That the charter of Laurel Beach *can* stand at the same time as the Act, 'one as the general law of the land, the other as the law of the particular case,' would hardly seem to require argument . . . It [the charter] does not undertake to permit something that the Act forbids; it merely offers a more stringent limita·tion."

In the light of the discussion under conclusion (2), it fol·lows as a subordinate conclusion that the commission in any event has abused its discretion in granting the permit even though the effect to be given § 634h(5) is that of a conferred discretionary power. The facts recited in the stipulation which, among others, include the filing of remonstrances by property owners, present as strong a case against the issuing of a permit as is to be found in applications generally for the issuance of permits by the commission. The commission relied, as was its right and duty, upon the opinion of the attorney general's office in granting the permit in question. But that opinion is deemed not to have approached the problem from the correct stand·point and not to have embodied the correct advices to the com·mission. Hence the error was committed which the court is called upon to correct in this proceeding. The court has no alternative but to hold that the commission did not have the power to grant the permit in question, or, if it did have such power, it is one of reasonable discretion only and on the stipu·lated facts the issuing of the permit constitutes an abuse of such discretion. The first question propounded — "Did the Liquor Control Commission have the power to grant the hotel liquor permit pertaining to the premises known as Hotel Elsmere?" — is answered "No."

It has been stated that the first of the six questions propounded is decisive of this proceeding. Actually, the second question framed requires an answer to the end that disposition of the case will clearly appear on the record. The second question reads: "Can the plaintiffs who are *third parties* (parties other than the applicant for said permit and the commission) challenge on any ground the action of the commission in granting said liquor permit?"

The discussion by our Supreme Court in the recent case of *Newington* v. *Mazzoccoli,* 133 Conn. 146 (particularly at p. 156 et seq.), is deemed of sufficient authority for the proposition that the plaintiffs are entitled to injunctive relief. Hence the second question is answered: "Yes; by injuncton."

The remaining four questions do not require an answer.

In view of the answers to the first two questions, a judgment may enter in accordance therewith, enjoining the use of the permit in question relating to the sale of alcoholic liquor on the premises of the Hotel Elsmere at Laurel Beach, in the town of Milford. The form thereof is to be presented to the court by plaintiffs' counsel for approval of contents and signature within ten days next following.