## BRUNSWICK CORPORATION ET AL. v. LIQUOR CONTROL COMMISSION

BOGDANSKI, PETERS, ARMENTANO, WRIGHT and DALY, Js.

Argued February 4—decision released May 5, 1981

*Richard M. Sheridan,* assistant attorney general, with whom were *Robert F. Vacchelli,* assistant attorney general, and, on the brief, *Carl R. Ajello,* attorney general, for the appellant (defendant).

*Frank J. Silvestri, Jr.,* for the appellees (plaintiffs).

PETERS, J.   This appeal presents the question whether the state liquor control commission may issue a permit for the sale of alcoholic beverages at an establishment within a town which has validly forbidden the sale of any alcoholic beverage other than beer.   The plaintiffs, Brunswick Corporation and Samuel J. Papale, Jr., operate a bowling alley situated within the general business district of Woodbridge, where there would be no prohibition against the sale of beer by a duly licensed druggist, hotel, package store, or by certain other establishments.   See General Statutes §§ 30-15 and 30-16 through 30-37c.   They applied to the liquor control commission for a permit to sell beer in their bowling alley.   The defendant commission rejected their application on the basis that only beer may be sold in Woodbridge and that under General Statutes §§ 30-15[1] and 30-37c[2] the only permit which may be issued to a bowling alley is one for the sale of all alcoholic beverages.   The plaintiffs thereupon sought a declaratory ruling by the liquor control commission as to whether the commission may, under the statutes, issue a bowling establishment permit limited to the sale of beer only.

A hearing was held before the commission on June 1, 1978, and the three commissioners thereafter unanimously held that the commission possessed "only the authority to issue those permits which the Legislature has created."   The commis-

[1] "[General Statutes] Sec. 30-15.   CLASSES OF PERMITS.   Permits shall be subject to the regulations of the department of liquor control and the provisions of this chapter and shall be of the following classes:   (1) Airline permit;  (2) Boat permit;  (3) Broker's permit;  (4) Cafe permit;  (5) Charitable organization permit;  (6) Club permit;  (7) Coliseum permit;  (8) Coliseum concession permit;  (9) Concession permit;  (10) (A) Druggist permit or (B) druggist permit for beer only;  (11) Golf country club permit;  (12) (A) Hotel

sion reasoned that the legislature has created a comprehensive scheme for the control of the sale of alcoholic beverages and retained to itself the authority to create new types of permits. It relied on *Murphy* v. *Bergin,* 118 Conn. 249, 171 A.2d 433 (1934), where this court held that the liquor control commission lacks the authority to exercise its discretion in the issuance of permits in disregard of any aspect of the comprehensive regulatory scheme which the legislature has created. There being no legislatively created bowling establishment permit for the sale of beer only, the commission concluded that it might not issue the permit sought.

The plaintiffs appealed to the Superior Court pursuant to General Statutes § 4-183. That court reversed the decision of the liquor control commis-

permit or (B) hotel permit for beer only; (13) (A) Manufacturer permit or (B) manufacturer permit for apple brandy or (C) manufacturer permit for cider or (D) manufacturer permit for beer only or (E) manufacturer permit for farm winery; (14) Military permit; (15) Night club permit; (16) Nonprofit public art museum permit; (17) Nonprofit theater permit; (18) Out-of-state shipper's permit for alcoholic liquors; (19) Out-of-state shipper's permit for beer only; (20) (A) Package store permit or (B) package store beer permit or (C) grocery store beer permit; (21) Railroad permit; (22) Resort permit; (23) (A) Restaurant permit or (B) restaurant permit for beer only or (C) restaurant permit for wine and beer only; (24) (A) Special sporting facility bar permit or (B) special sporting facility concession permit or (C) special sporting facility employee recreational permit or (D) special sporting facility guest permit or (E) special sporting facility restaurant permit; (25) Tavern permit; (26) Temporary permit for beer only; (27) (A) University permit; or (B) university liquor permit; (28) (A) Warehouse bottling permit or (B) warehouse storage permit; (29) (A) Wholesaler permit or (B) wholesaler permit for beer only; (30) Bowling establishment permit; (31) (A) Special outing facility permit or (B) special outing facility permit for beer only."

[2] "[General Statutes] Sec. 30-37c. BOWLING ESTABLISHMENT PERMIT. A bowling establishment permit shall allow the retail sale of alcoholic liquor to be consumed on the premises of a commercial bowling establishment containing ten or more lanes."

sion and held, as a matter of statutory construction, that the liquor control commission may issue a bowling establishment permit for the sale of all alcoholic beverages to an establishment situated within a town which properly forbids all alcoholic sales except those of beer because such a permit "would be limited by operation of [General Statutes] section 30-12 which voids the license to the extent [it is] not permitted by law." The court reasoned that "[a]ny other conclusion would reach an absurd result," forbidding that which neither the legislature nor the town intends to forbid. It thereupon ordered the commission to accept the application of the plaintiffs and to grant them a permit.

Our legislature has, since the adoption of the twenty-first amendment to the constitution of the United States, exercised its authority to regulate pervasively the sale of alcoholic beverages within the state. See General Statutes (1933 Sup.) §§ 669b et seq.; General Statutes (1935 Sup.) §§ 1011c through 1103c; General Statutes (1937 Sup.) §§ 602d through 625d; General Statutes (1939 Sup.) §§ 947e through 985e; General Statutes (1941 Sup.) §§ 450f through 472f; General Statutes (1943 Sup.) §§ 524g through 537g; General Statutes (1945 Sup.) §§ 617h through 647h; General Statutes (1947 Sup.) §§ 728i through 738i; General Statutes (1949 Rev.) §§ 4222 through 4323; General Statutes (1958 Rev.) §§ 30-1 through 30-113; General Statutes (1958 Rev., Rev. to 1981) §§ 30-1 through 30-113. A major part of the regulatory scheme has been the requirement of a permit for any alcohol sale and the creation only of certain distinct types of permits, each allowing certain types of sales in certain types of selling establish-

ments. No permit may be issued to an establishment of a type for which no specific permit exists; the state liquor control commission may issue to any establishment only the type of permit pertaining thereto. *Murphy* v. *Bergin,* supra. Various new types of permits have been statutorily created, as the legislature has from time to time deemed it wise to change the types of establishments in which alcoholic beverages may be sold.

One aspect of the regulatory scheme has been the local option, whereby any town may, by a statutorily prescribed referendum procedure, impose within the town limits a *more* restrictive rule as to sales of alcohol than that which the legislature chose. Never, however, has the legislature allowed a town to substitute a *less* restrictive rule, or to create a class of permits different from those created by the statutes.

A more restrictive rule as to alcohol sales than the one chosen by the legislature was first adopted by the town of Woodbridge in 1935. In 1935, the statutes provided that a referendum should allow voters to elect among three options: all alcoholic beverages; beer only; no permit for alcoholic beverages. See General Statutes § 1024c (1933, 1935 Sup.). In a valid exercise of the power properly conferred by the legislature, Woodbridge then determined by referendum to elect the second option, forbidding the sale within its limits of all alcoholic beverages except beer. This decision has never been modified and the prohibition remains validly in force. General Statutes § 30-13. At that time the legislature permitted no sales of alcoholic beverages of any kind in bowling establishments.

The statutes governing local options concerning alcohol sales have subsequently been changed. Any town now conducting such a referendum must do so by designating upon the ballot the following choices: no permit, all permits, and specified permit(s). General Statutes §§ 30-10, 30-11. The choice of beer only has been replaced by one of a specified permit or permits, designated on the ballot. There are now several legislatively created permits, that may be issued to establishments of certain types only, for the sale of beer only. See General Statutes §§ 30-15 through 30-41. A bowling establishment beer only permit, however, does not exist. Ibid.

The plaintiffs nevertheless argue strenuously that the 1935 decision of the voters of Woodbridge must be read to allow the sale of beer in bowling establishments despite the fact that no bowling establishment beer only permit existed then or exists now. In 1935, no alcoholic beverages of any kind could be sold in any bowling establishment. In 1981, if the voters of any town wished, at a referendum held today, to permit the sale of beer only in their town, they could not choose to permit its sale in bowling establishments. Their options would be limited to forbidding the sale of liquor there entirely, or permitting all liquor to be sold there. Under the present statutory scheme; General Statutes §§ 30-15 through 30-41, particularly § 30-37c; the only permit which may be issued to a bowling establishment is one allowing the sale of all alcoholic beverages. The plaintiffs rely on General Statutes § 30-12 to bridge this gap. That statute provides, as it did in 1935, that "[w]hen any town has [by referendum] voted upon the question of liquor permits, any liquor permit granted in such

town which is not in accordance with such vote shall be void . . . ." The plaintiffs maintain, as the trial court held, that this statute may be construed to make a permit void in part, and thus to allow a vote held in 1935 to operate as a limitation on a permit first created in 1976. Although this argument has great practical appeal, we disagree.

We can perceive no basis upon which to amend the plain words of § 30-12 so as to make the statute read: void to the extent that it is not in accordance with a prior local option vote. We may not "by the process of construction abrogate a clear expression of legislative intent." *Buxton* v. *Ullman,* 147 Conn. 48, 57, 156 A.2d 508 (1959), appeal dismissed, 367 U.S. 497, 81 S. Ct. 1752, 6 L. Ed. 2d 989, reh. denied, 368 U.S. 869, 82 S. Ct. 21, 7 L. Ed. 2d 69 (1961), overruled on other grounds, *Griswold* v. *Connecticut,* 381 U.S. 479, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (1965). Nor may we "read into clearly expressed legislation provisions which do not find expression in its words." *International Business Machines Corporation* v. *Brown,* 167 Conn. 123, 134, 355 A.2d 236 (1974). If a statutory scheme is clearly comprehensible and can be applied, we will apply it although it may mandate a result which appears illogical. If the enactment be constitutional, its wisdom is not for this court to determine. *Cyphers* v. *Allyn,* 142 Conn. 699, 705, 118 A.2d 318 (1955).

The plaintiffs argue that the trial court's construction of the statute is not only correct but essential to the enactment's constitutional validity. If the statutes forbid the permit they seek, it is urged, the statutes deny them due process and equal protection of the law. The trial court, in view of its

construction of the statute, had no reason to reach this question. Our reading of the statute requires that we do so.[3]

Our cases, and those of the Supreme Court of the United States,[4] leave little doubt of the constitutional validity of the statutory scheme as we have construed it. The statutes here involved, at least insofar as the plaintiffs are concerned,[5] regulate only business activity. Such "legislative effort[s] to structure and accommodate 'the burdens and benefits of economic life' [carry] a presumption of constitutionality. ... [O]ne complaining of a due process violation [flowing therefrom must] establish that the legislature has acted in an arbitrary and irrational way." *Duke Power Co.* v. *Carolina Environmental Study Group,* 438 U.S. 59, 98 S. Ct. 2620, 57 L. Ed. 2d 595 (1978), quoting *Usery* v. *Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S. Ct. 2882, 49 L. Ed. 2d 752 (1976); *New Orleans* v. *Dukes,* 427 U.S. 297, 303-304, 96 S. Ct. 2513, 49 L. Ed. 2d 511 (1976); *Ferguson* v. *Skrupa,* 372 U.S. 726, 731-33, 83 S. Ct. 1028, 10 L. Ed. 2d 93 (1963);

[3] The issue is properly before us. The plaintiffs have a sufficient interest in the outcome to confer standing upon them; see *Maloney* v. *Pac,* 183 Conn. 313, 319-22, 439 A.2d 349 (1981); and their interest is one which may be constitutionally protected. See *Board of Regents* v. *Roth,* 408 U.S. 564, 571, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). They have not so relied upon the statute as to be now unable to attack it. See *Society for Savings* v. *Chestnut Estates, Inc.,* 176 Conn. 563, 567-69, 409 A.2d 1020 (1979).

[4] The equal protection and due process clauses of the United States and Connecticut constitutions have the same meanings and the same limits. *Caldor's Inc.* v. *Bedding Barn, Inc.,* 177 Conn. 304, 314, 417 A.2d 343 (1979); *Miller* v. *Heffernan,* 173 Conn. 506, 516-17, 378 A.2d 572 (1977); *Horton* v. *Meskill,* 172 Conn. 615, 639, 376 A.2d 359 (1977).

[5] These plaintiffs make no claim that the regulatory scheme unreasonably interferes with their right to consume alcoholic beverages.

*Williamson* v. *Lee Optical Co.,* 348 U.S. 483, 75 S. Ct. 461, 99 L. Ed. 563 (1955); *United Illuminating Co.* v. *New Haven,* 179 Conn. 627, 635–43, 427 A.2d 830, appeal dismissed, 449 U.S. 801, 101 S. Ct. 45, 66 L. Ed. 2d 5 (1980); *Caldor's, Inc.* v. *Bedding Barn, Inc.,* 177 Conn. 304, 314–15, 417 A.2d 343 (1979); *Miller* v. *Heffernan,* 173 Conn. 506, 509, 378 A.2d 572 (1977), appeal dismissed, 434 U.S. 1057, 98 S. Ct. 1226, 55 L. Ed. 2d 758 (1978). "[T]he judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines . . . ." *New Orleans* v. *Dukes,* supra, 303. If the classification created by the statutory scheme "rationally furthers the purpose" of the legislature; *New Orleans* v. *Dukes,* supra, 304; and that purpose is not impermissible, wholly economic legislation is constitutional. Cf. *Morey* v. *Doud,* 354 U.S. 457, 77 S. Ct. 1344, 1 L. Ed. 2d 1485 (1957), explicitly overruled in *New Orleans* v. *Dukes,* supra, 306. See Tribe, American Constitutional Law, 994–1000 (1978).

The plaintiffs implicitly concede that their claim of a denial of equal protection is properly to be judged by the rational basis test. See Tribe, supra, 994–96. This is correct; if there is a rational basis upon which the legislature could have chosen to enact this statutory scheme it is not unconstitutional merely because some distinctions are drawn or because others might have been. See Tribe, supra, 997–99. No suspect classification or fundamental right is involved here. It is not necessary to demonstrate that there is a rational basis for distinguishing beer from other intoxicating liquors. The plaintiffs' assertion of unequal protection, then, rests

upon the fact that the legislature has found it desirable to provide for the issuance of beer only permits to druggists, hotels, out-of-state shippers, package stores, restaurants, wholesalers, and special outing facilities but not for other classes of potential permittees, including airlines, cafes, clubs, concessions, night clubs, museums, theatres, taverns, universities, and bowling establishments. The legislature may rationally make distinctions among establishments based upon the types of activities conducted there, for the purpose of regulating the sale and consumption of alcoholic beverages. It is entirely logical to presume that this will bear a relation to the manner and effect of the consumption of alcoholic beverages. See *Inturri* v. *Healy,* 426 F. Sup. 543 (D. Conn. 1977) (discrimination in alcohol regulation between dinner theatres and lounges and cafes valid.)

While constitutional guarantees are not suspended merely because of the twenty-first amendment to the constitution of the United States and the fact that the subject is alcohol; *Francis* v. *Fitzpatrick,* 129 Conn. 619, 622, 30 A.2d 552 (1943); and the states are not by that amendment freed "from all restrictions upon the police power to be found in other provisions of the Constitution"; *State Board* v. *Young's Market Co.,* 299 U.S. 59, 63–64, 57 S. Ct. 77, 81 L. Ed. 38 (1936); *California Retail Liquor Dealers Assn.* v. *Midcal Aluminum, Inc.,* 445 U.S. 97, 108, 100 S. Ct. 937, 63 L. Ed 2d 233 (1980); that amendment does give the state "virtually complete control over . . . how to structure the liquor distribution system." Id., 946. See also *Craig* v. *Boren,* 429 U.S. 190, 206, 207, 97 S. Ct. 451, 50 L. Ed. 2d 397 (1976), reh. denied, 429 U.S. 1124, 97 S. Ct. 1161, 51 L. Ed. 2d 574 (1977). The legislature has thus acted

within its competence in enacting the comprehensive scheme for the regulation of the sale of alcoholic beverages.

Viewed either as a regulation of business activity or as a comprehensive scheme for the regulation of the liquor distribution system, the present statutes are not unconstitutional. Their constitutionality is not impaired because they do not fully accommodate the preference of Woodbridge voters for beer only permits.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the appeal and to confirm the decision of the commission.

In this opinion the other judges concurred.