THE STATE, EX REL. MORTON, v. HAUSER, COMMIS-
SIONER OF BUILDINGS.

*Municipal corporations—Building Code—Billboards prohibited,
when—Consent of surrounding property owners—Re-con-
struction of billboards upon buildings or ground—Consti-
tutional law—Cincinnati building code—Mandamus.*

1. Mandamus will not lie to compel the commissioner of build-
ings of Cincinnati to issue a permit for the erection of a
billboard on the rear of a twenty-five foot lot, the city
ordinance regulating billboards providing that "It shall
be unlawful * * * to * * * erect or construct any
billboard * * * in any block on any public street
* * * without first obtaining the consent in writing of
the owners * * * owning a majority of the frontage of
the property on both sides of the street in the blocks,"
where the written consent of such property owners has
not been obtained. Such ordinance is not limited in its
application to billboards to be erected at any certain dis-
tance from the street.

2. Section 345-E of the Cincinnati building code, providing
that any existing billboard that is blown down or de-
stroyed shall not be re-constructed unless all regulations of
the building code as to size, location, etc., are complied
with, is applicable to billboards erected on buildings as
well as those erected on lots.

3. Sections 345-E, 345-G and 455-B of the Cincinnati building
code, known as the billboard ordinance, are a valid exer-
cise of the police power of the city.

(Decided July 10, 1922.)

IN MANDAMUS: Court of Appeals for Hamilton
county.

*Mr. I. L. Huddle* and *Mr. A. C. Fricke,* for re-
lator.

*Mr. Saul Zielonka,* city solicitor, and *Mr. Lan-*

*don L. Forchheimer* and *Mr. Max M. Schiff,* assistant city solicitors, for defendant.

BUCHWALTER, J.   There are three cases by this title, original actions in mandamus, brought in this court to compel George Hauser, commissioner of buildings of the city of Cincinnati, to issue permits for the erection of certain billboards.   They were heard together on agreed statements of facts, as they involve the interpretation and validity of certain sections of what are known as the billboard ordinances of the city of Cincinnati. The sections of the ordinances in question are the following:

Section 345-E, Building Code:

"Any billboard, signboard or other structure or any substantial part thereof now existing, and which for any reason or purpose is blown down, destroyed, taken down or removed, shall not be re-erected, reconstructed, rebuilt or relocated unless as regards size, location, and all other regulations of this Building Code, and all the provisions of this Building Code are complied with. In case of accidental destruction a new permit shall be granted without cost if one permit has already been paid for the original work."

Section 345-G, Building Code:

"It shall be unlawful for any person, firm or corporation to maintain, erect or construct any billboard or signboard in any block on any public street in which one-half of the buildings on both sides of the street are used for residence purposes without first obtaining the consent in writing of the owners or duly authorized agents of said owners owning a majority of the frontage

of the property on both sides of the street in the blocks in which such billboard or signboard is maintained or to be erected, constructed or located. Such written consents shall be filed with the Commissioner of Buildings before a permit shall be issued for the maintenance, erection, construction or location of such billboard or signboard.''

Section 455-B, Building Code:

''All signs and billboards constructed in the fire limits, more than two (2) feet in height on any building or separately, shall be constructed entirely of metal including the upright supports and braces of the same.''

The agreed statements of facts in these various cases set forth that throughout the city of Cincinnati papers accumulate behind billboards, and that billboards are used as a place of deposit for garbage, refuse of all kinds, offal, etc.; that criminals congregate behind them to lie in wait for their victims; that crimes are committed behind them; and that high winds frequently blow down or partially destroy them.

In cause No. 2033 the billboard was to be located on the rear of a twenty-five foot lot, on McMicken avenue, between Freeman and Baymiller. It is conceded by the agreed statements of facts that the block in which the proposed billboard is to be erected is on a public street in that city; that it is not within the fire zone; that the consents in writing from the property owners, or their authorized agents, were not presented to or filed with the building commissioner at the time of presenting the application for the permit, nor thereafter, until after the commencement of this action, when certain consents, which included

therein the names of owners of property not on the block in question, were presented, but not filed, and that the plaintiff has not obtained the consent in writing of the owners or duly authorized agents of those owning a majority of the property fronting on both sides of the street in that block.

The ordinance is not limited in its application to signboards to be erected at any certain distance from the street, and there are, as shown by the agreed statements of facts, objectionable features to billboards which would apply as well to those placed on the rear as to those located on the front of lots.

The commissioner was, therefore, under no duty or obligation to issue the permit in this case, if the above sections of the ordinances were valid. The validity of the ordinances will be considered hereafter.

As to cause No. 2034, there was an application made for a permit to repair the billboard at Nos. 3, 5 and 7 West Clifton avenue, which had been greatly damaged and partially destroyed by a wind storm. This billboard, when originally constructed, conformed to the provisions of the ordinances of the city of Cincinnati then existing. The billboard was located on a building, about one story above the street, was more than two feet in height, and was to be constructed of wood and iron. This location is within the fire zone of the city of Cincinnati. It is a residential block, and no consents were secured or filed. Clearly under the ordinances above set forth the refusal of the commissioner to issue the permit was not improper.

Cause No. 2035 involves the erection of a bill-

board over two feet in height on a vacant lot south of Eighth street and west of Garard street. This was to be constructed of wood and metal. It is within the fire zone, and under Section 455-B it should have been constructed only of metal.

It is maintained that the ordinances do not apply to a signboard erected on the rear of a lot, or on a building, because the reasons for the passage of the ordinances do not exist under these conditions, and, further, to extend the police power of the city to that extent would be a gross abuse of that power and an undue interference with the use of private property.

Certainly nuisances can be committed behind billboards whether located on the front or rear of lots, and would be just as objectionable to the residents of that neighborhood in either place. Danger from the falling of billboards from a build ing, as a result of high winds, is not less great than if erected on the ground. The case of *State, ex rel. Moore Oil Co.,* v. *Dauber, Bldg. Inspector,* 99 Ohio St., 406, syllabus 1, is relied upon by the relator, but in that case the ordinance particularly exempted from its provisions such structures as were already in existence. Section 345-E, under consideration here, specifically refers to repairs to existing buildings, so that the above case is not an authority, nor is it applicable to the question presented here. These provisions of the ordinances are properly within the police power of the city, unless shown to be clearly arbitrary, unreasonable or discriminatory. This same question has been before the courts in numerous cases, and such ordinances have not been held unconstitutional, unless council is clearly without the power

to enact them. The police power includes that which is necessary and reasonable to secure the peace, safety, health, morals and welfare of the public. We do not find that these ordinances are arbitrary, unreasonable or discriminatory, nor that their provisions constitute undue interference with the use of private property. The following cases are authority for this position: *Morton* v. *City of Cincinnati,* cases No. 1618 and 1619, Hamilton county court of appeals; *City of Xenia* v. *Schmidt,* 101 Ohio St., 437; *St. Louis Poster Advertising Co.* v. *St. Louis,* 249 U. S., 269; *State Board of Health* v. *City of Greenville,* 86 Ohio St., 1, and *Cusack Co.* v. *City of Chicago,* 242 U. S., 526.

The relator in these actions in mandamus must clearly show that he is entitled to the relief asked and that the commissioner of buildings, the defendant herein, has failed or refused to do his plain duty. Such has not been shown to be the situation here.

*Writs denied.*

HAMILTON, P. J., and CUSHING, J., concur.