The People of the State of New York, Respondent, *v.* Joseph S. Sterling, Appellant.

Third Department, November 10, 1943.

*Schwarte, Slade, Harrington & Goldsmith,* attorneys *(John A. Slade* of counsel), for appellant.

*Nathaniel L. Goldstein, Attorney-General (Orrin G. Judd, Solicitor-General; Henry S. Manley, Assistant Attorney-General* of counsel), for respondent.

HILL, P. J. Appeal by defendant from a judgment entered upon a directed verdict in an action brought by the State to recover a penalty under the Conservation Law (§ 65), for erecting and maintaining advertising signs and structures in the Adirondack Park without obtaining a written permit from the Conservation Department. There was an earlier appeal in this action from an order denying plaintiff's motion for judgment on the pleadings. The order was affirmed. (257 App. Div. 560).

Section 62 (Conservation Law) recites that it was enacted " to conserve the natural beauty of the Adirondack Park and to preserve and regulate the said park for public uses for the resort of the public for recreation, pleasure, air, light and enjoyment and to keep it open, safe, clean and in good order for the welfare of society " and it provides that no person shall erect or maintain within the boundaries of the park " any

advertising sign or advertising structures or devices of any kind, except under written permit from the department.'' The inhibition does not apply to signs erected upon property in connection with a business conducted thereon, or within the limits of an incorporated village. Appellant's answer raises several issues, including the constitutionality of the act.

The signs advertise an exhibition of live fur animals and fur, and in some instances, give the distance to the exhibit. They vary in size from eight to thirty-two feet in length and from about six to eight and a half feet in height. Appellant asked to have the jury determine as a question of fact, whether the signs interfere with the public use of the park for recreation, pleasure, air, light, enjoyment, safety and cleanliness, or if the real purpose of the statute is the preservation of the aesthetic; and as to whether the classification permitting signs in incorporated villages and upon land advertising business conducted thereon is reasonable; also whether from numerous informal discussions of defendant and his counsel with employees of the Conservation Department, including attorneys, the necessity to apply for a permit has been waived and whether it appears that the Department's attitude is to refuse permits and that an application would be futile.

The distinction as to a sign advertising a business conducted upon the premises where it is erected and signs within incorporated villages, the governing bodies of which are in general control of streets and the like, under the authorities is not arbitrary, and it is a question of law and not of fact. The request to have " the general issue " submitted to a jury doubtless merges with the assertion that the signs affect only the aesthetic sentiments of the public and therefore the statute is unconstitutional. This likewise is a question of law, to be determined upon proven facts which in this case are not in dispute.

The broad question of constitutionality on the aesthetic issue seems still to be awaiting determination by the court of last resort in this State. That court, discussing a city ordinance amounting to substantially an all-out inhibition against sign boards on all lands, said: " Even were we to assume that outdoor advertising on private property within public view may without compensation be restricted by law for cultural or aesthetic reasons alone, this prohibition, which includes *all* land in the city of Troy, without definition of the structures proscribed or other standard of regulation, cannot be sustained consistently with fundamental constitutional principles ''. (*Mat-*

*ter of Mid-State Advertising Corp.* v. *Bond*, 274 N. Y. 82, 84.)

In connection with a judgment restraining the Superintendent of Public Works from building a screen to shut out all or a portion of the view of a sign ten feet high by fifty-three feet long, and within thirty-five feet of the traveled portion of a highway, the late Chief Judge POUND, in an oratorical flight, said: " Beauty may not be queen but she is not an outcast beyond the pale of protection or respect. She may at least shelter herself under the wing of safety, morality or decency. It is, however, needless for the decision of the case to delimit her sphere of influence." (*Perlmutter* v. *Greene*, 259 N. Y. 327, 332.)

The above-quoted statements do not determine the aesthetic question, but they show a softening from the rigidity of Dillon on Municipal Corporations (5th ed.) § 695, quoted with approval by the Appellate Division in *Matter of Isenbarth* v. *Bartnett* (206 App. Div. 546, 549, affd. without opinion, 237 N. Y. 617): " That the police power cannot, for aesthetic purposes, be used to deprive the owner of property of its full beneficial use, and that, in short, zoning or similar legislation is not to be exercised for purposes other than the health, safety, convenience and public welfare of the people at large."

If the constitutional issue is presented in this case, we do not presume to decide it, and it is not necessary, as it is unquestioned that defendant failed to apply to the Department for a written permit, and as matter of law, the State Agency in charge of the scenic area would have reasonable power of control over the size and location of signs, and the judgment should be affirmed.

BLISS, J. (concurring). I vote to affirm for the reasons stated by Presiding Justice HILL, as well as those which follow:

There is a direct relation between the preservation of the natural scenic beauty of the Adirondacks and the maintenance of the health and mental composure of the citizens of the State. Each year physicians send thousands out of our cities and more thickly populated areas where factories, billboards and the like prevail in large numbers to seek the physical and mental rest and composure afforded by natural surroundings of the Adirondacks, Catskills and other mountainous or rural areas. Obviously those who are in a poor physical or highly nervous condition and desire such restful surroundings where they may recover their health and physical well-being cannot attain that which they seek if they find in that area the same man-made, mind-disturbing, rest-removing billboards or other so-called

indications of progress. It is necessary to the health of the people of our State that the quiet and natural beauties of the Adirondacks be preserved as a haven for those who have broken down in the hustle and bustle of metropolitan life and need to recuperate. The effect of natural surroundings upon the human mind and nervous system is clearly recognized by the medical profession today. Surely it must be that the State has the right to preserve these natural conditions as a rest center for those who need them. There is a reasonable relation between the health of the people and the objects attained by this statute, or at least the Legislature might so find. The question is not solely aesthetic. It involves the health and welfare of the people of the State as a whole. Rest cures are not effected by the contemplation of a row of ugly billboards. They may be brought about, however, by a sojourn in unspoiled natural surroundings.

This defendant has acquired no vested property right to maintain these particular billboards because some of them were erected before the regulatory statute was enacted. He does not own the land on which any of them stood. It was all leased and the leases expired and were renewed after the statute was enacted. Hence no vested rights are involved.

CRAPSER, HEFFERNAN and SCHENCK, JJ., concur with HILL, P. J.; BLISS, J., concurs in the opinion of HILL, P. J., and with a separate memorandum.

Judgment affirmed, with costs.