Murphy, Inc., et al. *v.* Town of Westport et al.

Maltbie, C. J., Brown, Jennings, Ells and Dickenson, Js.

Argued June 7—decided November 8, 1944.

*John H. Mountain,* for the appellants (defendants).

*Irwin E. Friedman,* with whom, on the brief, was *Samuel E. Friedman,* for the appellees (plaintiffs).

MALTBIE, C. J. The named plaintiff is a corporation engaged in the business of outdoor advertising, and the other plaintiff, Backiel, is the owner of land in the defendant town which the corporation had leased and upon which it proposed to erect a billboard. The town has adopted a zoning ordinance and the land leased to the plaintiff is in a "business district" as defined in it. The plaintiffs brought the action to restrain the defendants from enforcing a provision in the ordinance forbidding in a business zone such a billboard as the corporation proposes to construct, and to compel the issuance of a building permit for its erection. The trial court held the provision of the ordinance in question void and gave judgment for the plaintiffs. The defendants have appealed.

The zoning ordinance divided the area of the town into residence districts and business districts. In the residence districts all advertising signs are forbidden except that, where the premises are used for certain home occupations or offices, signs giving notice of the use not exceeding two square feet in area may be displayed, and that signs not exceeding eight square feet in area may be erected for the purpose of advertising the particular land or premises upon which a sign stands. In business districts such signs are also permitted, but the ordinance provides that "Billboards or advertising signboards are prohibited in all business districts except as they refer to business conducted on the property on which the billboard stands."

The Boston Post Road runs across the town from east to west for a distance of about five miles and the land on each side of it is zoned as a business district to a depth of two hundred feet except that at two or three places the district extends further from the highway; and there are two or three other small business districts within the town. It has a population of about

8250. It is primarily a community of homes and more than 90 per cent of its area is devoted to residential purposes. There is no industrial zone under the ordinance, no manufacturing, except as nonconforming uses, is permitted and the only business enterprises allowed are those where goods are sold or services rendered primarily at retail. The Boston Post Road has four lanes of concrete and carries heavy traffic. When the ordinance took effect in 1930, the plaintiff corporation maintained along the Post Road within the town fifteen billboards, with forty panels, each approximately fifteen by twenty-five feet, and, except for some panels voluntarily withdrawn, these billboards have continued as nonconforming uses. While the corporation was engaged in moving the billboard in question from a tract of land on which it had stood to the Backiel property, the zoning enforcement officer stopped the work, and when the corporation applied for a permit to erect the billboard the permit was refused by the zoning authorities.

Since about 1905 there has been a considerable volume of litigation involving the right of a state or municipality to regulate or prohibit billboards, and generally speaking there has been a growing tendency to regard the power more broadly. See *General Outdoor Adv. Co.* v. *Indianapolis,* 202 Ind. 85, 172 N. E. 309, and note, 72 A. L. R. 453, with supplemental decisions. In the earlier cases, courts apparently did not realize as clearly as they do now, as the result of facts found upon various trials, that billboards may be a source of danger to travelers upon highways through insecure construction, that accumulations of debris behind and around them may increase fire hazards and produce unsanitary conditions, that they may obstruct the view of operators of automobiles on the highway and may distract their attention from their driving,

that behind them nuisances and immoral acts are often committed, and that they may serve as places of concealment for the criminal. *Cusack* v. *Chicago,* 242 U. S. 526, 529, 37 Sup. Ct. 190; *Perlmutter* v. *Greene,* 259 N. Y. 327, 331, 182 N. E. 5; *Chicago* v. *Gunning System,* 214 Ill. 628, 639, 73 N. E. 1035; *St. Louis Gunning Co.* v. *St. Louis,* 235 Mo. 99, 144, 155, 137 S. W. 929; *General Outdoor Adv. Co.* v. *Dept. of Public Works,* 289 Mass. 149, 181, 193 N. E. 799; *People* v. *Wolf,* 220 App. Div. 71, 76, 220 N. Y. S. 656.

The earlier cases were more prone to regard esthetic considerations as the predominating motive of the restrictions or prohibitions and for that reason to condemn the regulations as not within the police power of the state; and there are a number of fairly recent decisions which hold that, where esthetic considerations afford the sole ground for the enactment of laws or ordinances affecting the individual's use of his land, they are void. *Crawford* v. *Topeka,* 51 Kan. 756, 33 Pac. 476; *Passaic* v. *Paterson Bill Posting Co.,* 72 N. J. L. 285, 287, 62 Atl. 267; *Varney & Green* v. *Williams,* 155 Cal. 318, 320, 100 Pac. 867; *State* v. *Whitlock,* 149 N. C. 542, 544, 63 S. E. 123; *Curran Co.* v. *Denver,* 47 Colo. 221, 227, 107 Pac. 261; *Anderson* v. *Shackleford,* 74 Fla. 36, 43, 76 So. 343; *Dowsey* v. *Kensington,* 257 N. Y. 221, 230, 177 N. E. 427; *Sign Works* v. *Training School,* 249 Ill. 436, 442, 94 N. E. 920; *Chicago Park District* v. *Canfield,* 370 Ill. 447, 457, 19 N. E. (2d) 376; *General Outdoor Adv. Co.* v. *Indianapolis,* supra, 94. That the field of esthetics in itself is, or at least will remain, without the scope of the proper exercise of the police power has not, however, gone unquestioned. *In re Wilshire,* 103 Fed. 620, 623; *State ex rel Civello* v. *New Orleans,* 154 La. 271, 283, 97 So. 440; *Cochran* v. *Preston,* 108 Md. 220, 229, 70 Atl. 113; *Parkersburg Builders Material Co.* v. *Barrack,*

118 W. Va. 608, 612, 191 S. E. 368, 192 S. E. 291; *State ex rel. Carter* v. *Harper,* 182 Wis. 148, 159, 196 N. W. 451; *Walnut & Quince St. Corporation* v. *Mills,* 303 Pa. 25, 34, 154 Atl. 29; concurring opinions in *Hav-a-Tampa Cigar Co.* v. *Johnson,* 149 Fla. 148, 168, 5 So. (2d) 433, and *People* v. *Sterling,* 267 App. Div. 9, 12, 45 N. Y. S. (2d) 39; dissenting opinions in *Matter of Mid-State Adv. Corporation* v. *Bond,* 274 N. Y. 82, 87, 8 N. E. (2d) 286, and *Sign Works* v. *Bloomfield Hills,* 279 Mich. 205, 209, 271 N. W. 823.

Indeed, as is pointed out in some of these decisions, such esthetic considerations as are involved in the regulation or prohibition of signboards cannot be divorced from material and economic factors; the presence of signboards near property may definitely affect its value and the comfort of those who may be living upon it. In *General Outdoor Adv. Co.* v. *Dept. of Public Works,* supra, 164, the Supreme Judicial Court of Massachusetts upheld a regulation of the defendant forbidding billboards near highways where, in the opinion of the authorities, "having regard to the health and safety of the public, the danger of fire and the unusual scenic beauty of the territory, signs would be particularly harmful to the public welfare," and the court, after citing some recent decisions of the Supreme Court of the United States, said (p. 188): "These authoritative pronouncements justify, in our opinion, the extension of the police power to the prohibition of billboards and advertising devices in places where they deface natural scenery and places of historic interest." Whether or not esthetic considerations in themselves would support the exercise of the police power, there can be no question that, if a regulation finds a reasonable justification in serving a generally recognized ground for the exercise of that power, the fact that esthetic considerations play a part in its adoption does

not affect its validity. *State* v. *Kievman,* 116 Conn. 458, 465, 165 Atl. 601; *St. Louis Poster Adv. Co.* v. *St. Louis,* 249 U. S. 269, 274, 39 Sup. Ct. 274; *General Outdoor Adv. Co.* v. *Indianapolis,* supra, 94; *Chicago Park District* v. *Canfield,* supra, 455. As stated by the Court of Appeals of New York: "Beauty may not be queen but she is not an outcast beyond the pale of protection or respect. She may at least shelter herself under the wing of safety, morality or decency." *Perlmutter* v. *Greene,* supra, 332.

The police power is not to be confined narrowly within the field of public health, safety or morality. In sustaining the right of the legislature to require that automobile junk yards be screened from public view, we said that "it is within the police power to regulate occupations or businesses which, owing to their nature, the manner in which they are conducted, or their location, if exercised or conducted without restriction, are or may be materially injurious to the public health, morals, comfort, prosperity or convenience, or otherwise detrimental to the general welfare." *State* v. *Kievman,* supra, 463. "We hold," says the Supreme Court of the United States, "that the police power of a State embraces regulations designed to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals or the public safety." *Chicago, B. & Q. Ry. Co.* v. *Drainage Commissioners,* 200 U. S. 561, 592, 26 Sup. Ct. 341. Again that court said that, generally speaking, "the police power extends to all the great public needs. . . . It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare." *Noble State Bank* v. *Haskell,* 219 U. S. 104, 111, 31 Sup. Ct. 186. See also *General Outdoor Adv. Co.* v.

*Dept. of Public Works,* supra, 187; *Matter of Wulfsohn* v. *Burden,* 241 N. Y. 288, 298, 150 N. E. 120; *State ex rel. Carter* v. *Harper,* supra, 155.

Municipalities in this state are specifically authorized to regulate in a zoning ordinance "the height, size and location" of advertising signs and billboards; General Statutes, Cum. Sup. 1935, § 88c; where there is no general zoning ordinance, the selectmen of any town and the legislative body of any city or borough are given power to establish zones within which commercial structures, including advertising signs, may be regulated; and the preamble of the statute states its objects to be: "For the purpose of promoting the health, safety and general welfare of municipalities and governmental subdivisions; for the purpose of conserving the natural or landscaped and improved scenery and encouraging and protecting the appropriate uses of land; for the purpose of providing for the public health, comfort, safety and general welfare, in living, working and transportation conditions, including highway development and vehicular transportation; for the purpose of regulating and restricting unsightly or detrimental developments, obstructions and constructions tending to depreciate the value of property and hinder progressive improvements in such municipalities and governmental subdivisions; and for the purpose of lessening, eliminating and regulating distracting hazards to safe motor vehicle operation and general traffic upon the highways." General Statutes, Cum. Sup. 1935, § 89c.

The purposes of zoning as they are generally recognized go far beyond the protection of public health, safety or morality; yet, under the broad scope of the police power referred to above, and in recognition of the fact that it cannot remain static but must change with the changing needs of the times, zoning regula-

tions have generally been held to be valid. *State* v. *Hillman,* 110 Conn. 92, 100, 147 Atl. 294; *Euclid* v. *Ambler Co.,* 272 U. S. 365, 47 Sup. Ct. 114; *Matter of Wulfsohn* v. *Burden,* supra, 298; *State ex rel. Carter* v. *Harper,* supra, 156; *General Outdoor Adv Co.* v. *Indianapolis,* supra, 97; *Ware* v. *Wichita,* 113 Kan. 153, 157, 214 Pac. 99. In one of the earlier cases upholding a regulation analogous to a zoning ordinance, *Windsor* v. *Whitney,* 95 Conn. 357, 111 Atl. 354, we said (p. 363): "It betters the health and safety of the community; it betters the transportation facilities; and it adds to the appearance and wholesomeness of the place, and as a consequence it reacts upon the morals and spiritual power of the people who live under such surroundings." Again we stated (p. 368): "A few years ago it was, so far as the rule had been announced, undoubted that restriction could not be imposed upon private property solely for æsthetic considerations. Later it has been said by high authority that æsthetic considerations may be regarded in connection with recognized police power considerations. And now Dillon, in the latest edition of his Municipal Corporations, § 695, says: 'The law on this point is undergoing development, and perhaps cannot be said to be conclusively settled as to the extent of the police power.' *Welch* v. *Swasey,* 214 U. S. 91, 29 Sup. Ct. 567, affirming 193 Mass. 364, 79 N. E. 745, tends to justify the author's conclusion." Zoning ordinances involve a reciprocity of benefit as well as one of restraint; *State ex rel. Carter* v. *Harper,* supra, 154; and a regulation of billboards which is part and parcel of such a plan may be found to stand upon a somewhat different ground than one which deals with them alone.

In *Cain* v. *State,* 105 Tex. Crim. Rep. 204, 207, 287 S. W. 262, an ordinance forbidding billboards in a portion of a city was held invalid upon the facts as

developed by the evidence. Like rulings were made in *Varney & Green* v. *Williams,* supra, as regards an ordinance which excluded billboards from an entire town, in *O'Mealia Outdoor Adv. Co.* v. *Rutherford,* 128 N. J. L. 587, 590, 27 Atl. (2d) 863, as regards one which excluded them from an entire borough, and in *Matter of Mid-State Adv. Corporation* v. *Bond,* supra, 84, as regards one which excluded from a city all billboards with the exception of those which advertised the sale of the property on which they were placed or a business conducted upon it. These cases all dealt with ordinances concerning billboards alone, not with regulations which were a part of a zoning plan. On the other hand, the Supreme Court of the United States has held that billboards may be excluded from residence zones; *Cusack Co.* v. *Chicago,* supra, 530; *St. Louis Poster Adv. Co.* v. *St. Louis,* supra, 274; and the zoning ordinance before the court in *Euclid* v. *Ambler Co.,* supra, 380, excluded billboards from four of the six use districts in the city. In *Liggett's Petition,* 291 Pa. 109, 139 Atl. 619, a provision in a zoning ordinance of the city of Pittsburgh excluding billboards exceeding a certain size from residence zones was sustained; and, while the report of that case does not specify the limitations as to size, a printed copy of the zoning ordinance of the city on file in the Connecticut State Library indicates that it prohibited in residence zones signboards not pertaining to the sale of the premises or to a business conducted thereon and restricted the permitted signs to an area not exceeding eight square feet. In *People* v. *Norton,* 108 Cal. App. 767, 771, 288 Pac. 33, an ordinance relating solely to billboards and restricting them in residential districts to an area not exceeding twelve square feet was held valid. In *General Outdoor Adv. Co.* v. *Dept. of Public Works,* supra, 196, an ordinance excluding signboards from residential

blocks was upheld, as, in *State, ex rel.* v. *Hauser,* 17 Ohio App. 4, was one forbidding them in any block in the city of Cincinnati in which one-half the buildings were used for residential purposes, without the consent of those owning a majority of the frontage. In *People* v. *Wolf,* supra, an ordinance forbidding any advertising sign anywhere in an incorporated village except those placed upon real estate to advertise that it was for sale or rent was sustained; it should be noted, however, that this decision preceded by some years the decision of the New York Court of Appeals in *Matter of Mid-State Adv. Corporation* v. *Bond,* supra. In our own case of *Windsor* v. *Whitney,* supra, 366, we make the broad statement with reference to zoning ordinances that the state "may prevent the erection of billboards or limit their height."

If, with these decisions as a background, we turn to the case before us, we are struck by the absence of any finding in regard to those circumstances which, as we have pointed out, other courts have considered in passing upon the validity of similar regulations. This action was brought by the corporation seeking to erect the billboard and by the owner of the land on which it was to be placed, and the burden of proof to sustain their right to relief rested upon them. This burden is emphasized by the principle that, in considering legislative action taken under the police power, it is the duty of the court, "in the exercise of great care and caution, to make every presumption and intendment in favor of the validity of the statute, and to sustain it unless its invalidity is beyond reasonable doubt." *State* v. *Heller,* 123 Conn. 492, 498, 196 Atl. 337; *Zahn* v. *Board of Public Works,* 274 U. S. 325, 328, 47 Sup. Ct. 594. Whether or not that burden has been sustained can only be determined by weighing all the relevant circumstances. A plaintiff, in a case like this, "has the

burden of overcoming the presumption of constitutionality applicable to such ordinances by reference not only to facts of which we may take judicial notice but also facts appearing in the [record]. He must demonstrate that, as matter of law, these regulations are unconstitutional and that there is no permissible interpretation of all of these facts which justifies their adoption as a reasonable exercise of the broad police power of the State." *Matter of Wulfsohn* v. *Burden,* supra, 296. The question must "be determined, not by an abstract consideration of the building or of the thing considered apart, but by considering it in connection with the circumstances and the locality." *Euclid* v. *Ambler Co.,* supra, 388. As far as the record shows, the trial court did not have before it any adequate basis of facts upon which to determine that the invalidity of the provisions of the ordinance in question had been established. If we were to sustain its decision, we would in effect be holding that, as matter of law, the legislative body cannot, with such exceptions as are provided in the ordinance before us, constitutionally prohibit billboards in the business zones of any of our towns, no matter what may be the circumstances or justification which existed in the particular case. We cannot so hold.

The trial court rested its decision quite largely on a conclusion that the regulation was illegally discriminative in that from the general prohibition of billboards it excepted any which referred to a business conducted on the property on which it stands. *O'Mealia Outdoor Adv. Co.* v. *Rutherford,* supra, 590, might be cited to support the trial court's decision; but in *General Outdoor Adv. Co.* v. *Dept. of Public Works,* supra, 212, an opposite conclusion was reached. See also *People* v. *Sterling,* supra, 11; *Kelbro, Inc.* v. *Myrick,* 113 Vt. 64, 74, 30 Atl. (2d) 527. There is no illegal discrimination

where there is between the classes some natural and substantial difference germane to the subject and purposes of the legislation. *Francis* v. *Fitzpatrick,* 129 Conn. 619, 623, 30 Atl. (2d) 552. Whether there is such a difference is primarily for the legislative branch of government to determine and the courts cannot interfere unless the classification is clearly unreasonable. *Second National Bank of New Haven* v. *Loftus,* 121 Conn. 454, 460, 185 Atl. 423. We have sustained as not involving illegal discrimination a city ordinance regulating junk yards which exempted existing yards from certain restrictions; *Levine* v. *Board of Adjustment of New Britain,* 125 Conn. 478, 482, 7 Atl. (2d) 222; and a state statute which subjected the automobile junk business to regulations not applicable to junk dealers in general. *State* v. *Kievman,* supra, 467; see also *Murphy* v. *Bergin,* 118 Conn. 249, 262, 171 Atl. 433; *Doncourt* v. *Danaher,* 126 Conn. 678, 686, 13 Atl. (2d) 868; *Packer Corporation* v. *Utah,* 285 U. S. 105, 108, 52 Sup. Ct. 273; *Cochran* v. *Preston,* supra, 232. In line with these authorities, we hold that the trial court could not properly conclude that the defendant town might not justifiably treat signs referring to business conducted on the property upon which they stand as a class apart from signs not so related to such a business. It is hardly necessary to add that, this being so, the difference in treatment does not constitute a violation of the provision in § 424 of the General Statutes that zoning regulations "shall be uniform for each class or kind of buildings or structures throughout each district." The provisions of the ordinance afford no occasion for considering the principle that a legislative body in delegating authority to an administrative officer must establish primary standards for the control of the action he may take. *State* v. *Stoddard,* 126 Conn. 623, 628, 13 Atl. (2d) 586.

We cannot sustain the conclusions of the trial court. On the other hand, we cannot agree with the Supreme Court of Vermont, which, in *Kelbro, Inc.* v. *Myrick*, supra, a case relied upon by the defendants, held that a corporation engaged in the business of outdoor advertising to which, by written agreement, an owner of land abutting on a highway had given permission to erect a billboard acquired thereby no right within the protection of constitutional guaranties. The argument is that the value of the use of land abutting on a highway for the location of a billboard is entirely dependent upon its visibility from the highway, that all the abutting owner can claim is a right to have that condition continued, that this is in the nature of an easement appurtenant to the land, but that the right is restricted to the display of advertising matter related to business conducted on the premises, and does not include advertising foreign to such a business, and that, therefore, the landowner cannot confer upon another the right to maintain a billboard upon which advertising of the latter kind is displayed. This argument is more fully developed in an article by Ruth I. Wilson, 30 Georgetown L. J. 723. The Vermont court, citing among other cases *Yale University* v. *New Haven*, 104 Conn. 610, 134 Atl. 268, 47 A. L. R. 667, says (p. 69): "The right of reasonable view has been generally recognized by the weight of authority and has been protected in numerous cases where encroachments on streets or sidewalks obscured the visibility of signs, window displays or show cases." It regards this right, as indeed we do in the *Yale University* case, as in the nature of or at least analogous to an easement, and states that it is as such appurtenant to the land of the abutter. As regards the incident of visibility, we are not able to see wherein there is any essential difference between advertising the landowner's own business and advertising

the business of another. The use of land abutting upon a highway for the maintenance of a billboard advertising the business of another than the owner is lawful and may bring a definite increment of value to the land. As an incident to the land which serves its beneficial use, the right is appurtenant to it. *Graham* v. *Walker,* 78 Conn. 130, 135, 61 Atl. 98; *Lindenmuth* v. *Safe Harbor W. P. Corporation,* 309 Pa. 58, 64, 163 Atl. 159; *Goodwillie Co.* v. *Commonwealth Co.,* 241 Ill. 42, 74, 89 N. E. 272; Jones, Easements, § 18; see *Whittelsey* v. *Porter,* 82 Conn. 95, 102, 72 Atl. 593. In fact, our statutes recognize the property interest involved in the use of land for advertising not related to any business located upon it by requiring that persons or corporations engaged in a business of that nature secure a license and a permit for any structure, device or display they may intend to erect for that purpose, unless it is within two hundred feet of the place where the goods advertised are made or sold or the business advertised is carried on; and they fix a substantial fee to be paid for the permit, graduated according to the size of the sign. General Statutes, § 2966 et seq. We have sustained the constitutionality of this statute as an exercise of the taxing power of the state. *State* v. *Murphy,* 90 Conn. 662, 98 Atl. 343. We said (p. 667): "That which is taxed is the special use or enjoyment which is being made of the property upon which the advertisement is located by the person maintaining it in the exercise of his right as property owner, lessee or otherwise." The right of visibility as related to the use of land for advertising, whether it be of a business located on the premises or one not so located, is in the nature of an easement appurtenant which attaches to the land and every part of it; that right is within the protection of constitutional guaranties; *Seattle Trust Co.* v. *Roberge,* 278 U. S. 116, 121,

49 Sup. Ct. 50; and one who leases the whole or a part of the land for the purpose of erecting a billboard on it acquires the same right the owner had. *Phoenix National Bank* v. *United States Security Co.*, 100 Conn. 622, 630, 124 Atl. 540; *Sieger* v. *Riu*, 123 Conn. 343, 347, 195 Atl. 735.

As the trial court did not have before it sufficient facts to enable it to determine whether or not the plaintiffs were entitled to relief, we must remand the case for further proceedings.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.