Taft, C, J.
In his assignments of error, statement of questions of law involved, brief and argument, the Director of Highways contends that the Court of Appeals erred in declaring Sections 5516.01 to 5516.05, inclusive, and 5516.99, Revised Code, unconstitutional in their application to the seven Ghaster billboards which are specifically involved in this case.
In considering that contention, it is necessary to consider, first, whether those statutory provisions are valid and constitutional in their general application. In its assignments of error, statement of questions of law, briefs and argument, Ghaster contends that they are not.
Ghaster contends, first, that these statutes take private property without compensation in violation of Sections 1, 16 and 19 of Article I of the Ohio Constitution and Amendment XIV of the federal Constitution.
In support of this contention, it is argued that property, within the meaning of the foregoing constitutional provisions, includes the right to use land and that, therefore, the deprivation of the right to use land, by the prohibition in these statutes against its use for billboard purposes, is a taking in part of property.
This line of argument is fallacious because it is necessarily based upon the assumption that the ownership of land includes an unrestricted right to use such land for any purpose for which it is useable.
*430 This fallacy is demonstrated by the words of Section 19 of Article I of the Ohio Constitution that ‘■'■private property shall ever be held inviolate, but subservient to the public welfare. ’ ’
The authorities relied upon by Chaster also disclose this fallacy. They all recognize that an owner’s right as a user of his land is limited to a “lawful” or “legitimate” use. See Terrace v. Thompson, Atty. Genl. (1923), 263 U. S., 197, 68 L. Ed., 255, 44 S. Ct., 15; State, ex rel. Seattle Title Trust Co., Trustee, v. Roberge, Supt. (1928), 278 U. S., 116, 73 L. Ed., 210, 49 S. Ct., 50, 86 A. L. R., 654; and City of Akron v. Chapman (1953), 160 Ohio St., 382, 116 N. E. (2d), 697, 42 A. L. R. (2d), 1140.
Obviously, the General Assembly may provide that a particular use of land shall be unlawful, even though that use had theretofore been lawful. See City of Akron v. Klein (1960), 171 Ohio St., 207, 168 N. E. (2d), 564. Likewise, the General Assembly may prohibit certain uses of land as nuisances even though such uses had theretofore been lawful. 39 American Jurisprudence, 293, Section 12.
Where, by a valid statute, the General Assembly has prohibited a particular use of property or has provided that such use shall constitute a nuisance, the owner no longer has a lawful or legitimate right to so use his land. See Benjamin v. City of Columbus (1957), 167 Ohio St., 103, 108, 146 N. E. (2d), 854, certiorari denied, 357 U. S., 904, 2 L. Ed. (2d), 1155, 78 S. Ct., 1147; Reinman v. City of Little Rock (1915), 237 U. S., 171, 59 L. Ed., 900, 35 S. Ct., 511; Hadacheck v. Sebastian, Chief of Police (1915), 239 U. S., 394, 60 L. Ed., 348, 36 S. Ct., 143, Ann. Cas. 1917B, 927.
Whether such a statute is valid will depend upon whether it comes within the police power.
The recent case of McKee v. City of Akron (1964), 176 Ohio St., 282, 199 N. E. (2d), 592, clearly demonstrates that depriving an owner of land of unrestricted use of his land will not necessarily amount to a taking of his property. In that case, this court unanimously held that “loss to a property owner of the comfortable enjoyment of his land and buildings, occasioned by odor arising from a sewage disposal plant operated *431 by a municipal corporation” was “not sufficient to constitute a taking of his property” within the meaning of constitutional provisions.
Admittedly, Ghaster has, with respect to the interstate highway or its access roads, no right of access to or egress from any of its parcels of land. Any such rights were purchased or appropriated from all whose property adjoined that highway. As this court held in State, ex rel. Schiederer, v. Preston, Dir. (1960), 170 Ohio St., 542, 166 N. E. (2d), 748, 84 A. L. R. (2d), 342, “any other rights which” an adjacent landowner (such as Ghaster) “may have with respect to benefits resulting from existence of a * * * highway are held subject to the public right to make improvements” of the highway “ (1) to provide a means of passage for the public and (2) to provide a means of access to and egress from abutting lands. ’ ’
That case held that there was as a matter of law no taking of property from an abutting-land owner, who still had a right of ingress to and egress from a highway, although an improvement of the highway “substantially interfered with * * * [her] unobstructed view of the street together with the relative harmony of said street with her abutting lot.”
In the instant case, the statutes only deprive an owner of a claimed right to use his land to communicate with those using the highway. As the Schiederer case indicates, any such right to so communicate can be taken from the landowner without compensation by the state for the purpose of improving the highway as a means of passage for the public.
In Kelbro, Inc., v. Myrick, Secy. of State (1943), 113 Vt., 64, 67, 30 A. (2d), 527, it is said in the opinion by Buttles, J.:
“It is necessary to consider the exact nature of the plaintiff’s alleged property rights which it claims have been invaded. It is obvious that something more is claimed than the mere right to erect and maintain billboard structures upon lands adjacent to the highway. In its essence the right that is claimed is to use the public highway for the purpose of displaying advertising matter. This fact has been well stated by the Philippine Supreme Court which has said that ‘the success of billboard advertising depends not so much upon the use of private property as it does upon the use of the channels of *432 travel used by the general public. Suppose that the owner of private property * * * should require the advertiser to paste his posters upon the billboards so that they would face the interior of the property instead of the exterior. Billboard advertising would die a natural death if this were done, and its real dependency not upon the unrestricted use of private property but upon the unrestricted use of the public highways is at once apparent. Ostensibly located on private property, the real and sole value of the billboard is its proximity to the public thoroughfares. Hence, we conceive that the regulation of billboards and their restriction is not so much a regulation of private property as it is a regulation of the use of the streets and other public thoroughfares.’ Churchill and Tait v. Rafferty, 32 P. I., 580, 609, appeal dismissed, 248 U. S., 591, 39 S. Ct., 20. In General Outdoor Adv. Co. v. Dept. of Pub. Works, 289 Mass., 149, 168, 169, 193 N. E., 799, 808, it is said: * * the plaintiffs are not exercising a natural right, * * * they are seizing for private benefit an opportunity created for a quite different purpose by the expenditure of public money in the construction of public ways. * * * The right asserted is not to own and use land or property, to live, to work, or to trade. * * * its main feature is the superadded claim to use private land as a vantage ground from which to obtrude upon all the public traveling upon highways, whether indifferent, reluctant, hostile or interested, an unescapable propaganda concerning private business with the ultimate design of promoting patronage of those advertising. Without this superadded claim, the other rights would have no utility in this connection. * * * ’ ”
See also Gardner, The Massachusetts Billboard Decision (1936), 49 Harvard Law Review, 869, and Wilson, Billboards and the Right to be Seen from the Highway (1942), 30 Georgetown Law Journal, 723.
As hereinbefore pointed out, the statutes involved in the instant case will not result in any constitutionally prohibited taking of property if they come within the police power of the state. In paragraphs one, two and three of the syllabus of Curtiss v. City of Cleveland (1959), 170 Ohio St., 127, 163 N. E. (2d), 682, it is stated:
“1. Even though legislation enacted pursuant to the police *433 power makes unlawful what has theretofore been lawful and thereby decreases or even destroys the value of property which has been used in what has theretofore been a lawful undertaking, such legislation will not be considered invalid as a ‘taking’ of that property, within the meaning of constitutional limitations, where such legislation bears a real and substantial relation to the public health, safety, morals or general welfare and is not unreasonable or arbitrary.
“2. In enacting such legislation, a legislative body is presumed to have decided that such legislation does bear such a real and substantial relation and is not unreasonable or arbitrary.
“3. Whether such legislation bears such real and substantial relation and whether it is reasonable or arbitrary are questions committed in the first instance to the judgment and determination of the legislative body, and the decisions of such legislative body on those questions will not be disturbed unless they appear to be clearly erroneous.”
Although the Curtiss case is a zoning case and the statutes involved in the instant case are admittedly not so-called zoning statutes, the rules so stated are equally applicable in determining the validity under the police power of statutes, such as those involved in the instant case, declaring certain uses of property nuisances and prohibiting such uses. See Zoning and the Law of Nuisance, 29 Fordham Law Review (1961), 749.
There has been a substantial volume of litigation relative to the validity of legislation regulating or prohibiting billboards. See annotations on Municipal Power as to Billboards and Outdoor Advertising, 72 A. L. R., 465; 58 A. L. R. (2d), 1314; Price, Billboard Regulation along the Interstate Highway System (1959), 8 Kansas Law Review, 81. As pointed out in the annotation at 79 A. L. R., 551 (1932), “most of the [early] cases passing on the constitutional power to regulate outdoor * * * advertising involve the validity of ordinances.” Also, many of those cases involve only zoning ordinances. However, there have been several recent decisions that have considered and sustained, as being within the police power of the state, statutes prohibiting billboards along high-speed highways, similar to the statutes involved in the instant case. New York State Thru *434 way Authority v. Ashley Motor Court, Inc. (1961), 10 N. Y., 151, 176 N. E. (2d), 566; Opinion of the Justices (1961), 103 N. H., 268, 169 A. (2d), 762; Moore v. Ward, Commr. of Highways (Ky., 1964), 377 S. W. (2d), 881. See Kelbro, Inc., v. Myrick, Secy. of State, supra (113 Vt., 64). See also Murphy, Inc., v. Town of Westport (1944), 131 Conn., 292, 40 A. (2d), 377 (zoning ordinance prohibiting billboards in all districts in the mnnicipalty except as such billboards refer to permitted businesses, offices or occupations conducted on the premises).
Ghaster has not referred to any cases which have considered statutes prohibiting billboards along high-speed highways and which have held that such statutes may not be enacted pursuant to the police power of the state. However, Ghaster does contend that such statutes are not within the police power of the state because they bear no real or substantial relation to the public health, safety, morals or general welfare.
In support of this contention, Ghaster argues that the evidence in the instant case demonstrates beyond doubt that advertising signs are not traffic hazards.
With respect to similar evidence, it is stated in the opinion of Fuld, J., in New York State Thruway Authority v. Ashley Motor Court, Inc., supra (10 N. Y. [2d], 151, 156):
“* * * There are some, perhaps, who may dispute whether billboards or other advertising devices interfere with safe driving and constitute a traffic hazard * * * but mere disagreement may not cast doubt on the statute’s validity. Matters such as these are reserved for legislative judgment, and the legislative determination, here expressly announced, will not be disturbed unless manifestly unreasonable. * * *”
Also, in the opinion in Moore v. Ward, Commr. of Highways, supra ([Ky.], 377 S. W. [2d], 881), 884, it is stated:
“Even assuming appellants could produce substantial evidence that billboard signs do not adversely affect traffic safety, this record indicates, and our common knowledge suggests, that the question involves so many intangible factors as to make debatable the issue of what the facts establish. Where this is so, it is not within the province of courts to hold a statute invalid by reaching a conclusion contrary to that of the Legislature. * * *”
*435 Furthermore, we note that the two scientific studies (Michigan and Iowa), upon which Ghaster places great reliance and which are supposed to establish conclusively that there is no relationship between signs and accidents, were both based upon data obtained before the advent of the interstate highway system.
As stated in the Opinion of the Justices, supra (103 N. H., 268), at 270:
“* * * With vehicles hurtling along at the speed which characterizes travel on interstate or so-called super highways, an instant’s inattention or confusion may be disastrous. We need not labor the point that anything beside the road which tends to distract or confuse the driver of a motor vehicle directly affects public safety. Signs of all sizes, shapes and colors, designed expressly to divert the attention of the driver and occupants of motor vehicles from the highway to objects away from it, may reasonably be found to increase the danger of accidents, and their regulation along highways falls clearly within the police power.”
There is another weakness in Ghaster’s contention that the police power of the state does not authorize enactment of statutes such as those involved in the instant case. That weakness is the apparent assumption that such statutes cannot be sustained unless they bear a real and substantial relationship to the public safety.
There are cases which refer only to the “public health, safety and morals” as the basis for the police power. Cox, Outdoor Advertisements — -Aesthetics and the “Public Right” (1959), 33 Tulane Law Review, 852. However, this court has consistently, as have most courts, at least in recent years, referred to the “public health, safety, morals and general welfare” as the basis for the police power. See, for example, Benjamin v. City of Columbus, supra (167 Ohio St., 103), and Curtiss v. City of Cleveland, supra (170 Ohio St., 127).
The “general welfare,” as a separate basis for the police power, is justified by the reasons given in their preambles for establishing both our state and federal Constitutions ([state] “to * * * promote our common welfare,” [federal] “to promote the general welfare”). Furthermore, Section 19 of Article I *436 of the Ohio Constitution states that “private property shall ever be held inviolate but subservient to the public welfare.”
The “general welfare” of the public encompasses more than the public health, safety and morals. This has frequently been recognized in cases dealing with legislation enacted under the police power to regulate or prohibit billboards.
Thus, in the opinion by Puld, J., in New York State Thruway Authority v. Ashley Motor Court, Inc., supra (10 N. Y. [2d], 151), 156, it is stated:
“* * * We need not * * * concern ourselves with the question whether the preservation of ‘the natural scenic beauty’ * * * would in and of itself be a sufficient basis for the legislation under consideration. # * As Chief Judge Pound put it in the Perlmutter case (259 N. Y., at page 332 [182 N. E., at page 6]), ‘Beauty may not be queen but she is not an outcast beyond the pale of protection or respect. She may at least shelter herself under the wing of safety, morality or decency. ’ ’ ’
In the Opinion of the Justices, supra (103 N. H., 268), 270, it is stated:
“* * * The safety, well-being and legitimate enjoyment of the public in the use of the highways is the paramount consideration of the bill.
6 Í * * #
“ * # * the maintenance of the natural beauty of areas along interstate highways is to be taken into account in determining whether the police power is properly exercised. * * * ”
In the opinion in Moore v. Ward, Commr. of Highways, supra ([Ky.], 377 S. W. [2d], 881), it is stated:
“* * * the traffic safety problem was only one of many significant public welfare considerations which doubtless influenced the Legislature to act. * * *
“It is peculiarly within the province of the Legislature to assimilate, consider and weigh all the factors which inhere in the concept of public welfare. When the courts repeatedly assert that they have no authority to challenge the wisdom of a statute, it is a recognition that the Legislature may within extremely broad limits determine its ‘own standard of public welfare.’ * * *
*437 “* # * there are other factors which weigh heavily in the balance of legislative decisions. Obviously a billboard sign is a distracting device. It diverts, and is designed to divert, the motorists attention from the highway. In the public interest the Legislature could weigh the right of the motorist to be free of such distracting signs. It could determine they impair the motorists enjoyment of the highway.”
In General Outdoor Advertising Co., Inc., v. Department of Public Works (1935), 289 Mass., 149, 193 N. E., 799, it is said in the opinion by Rugg, C. J., at page 211:
“* * * The grounds upon which, in our opinion, rests the validity of these rules and regulations embrace * ** * protection of the traveling public from annoying obtrusion of commercial propaganda * * *.”
In Churchill v. Rafferty, Collr. of Internal Revenue, supra (1915), (32 Phil. Rep., 580), 608, an early case involving a prohibition of billboards ‘‘offensive to the sight,” it is stated in the opinion by Trent, J.:
“* * * [offensive noises] * * * have little bearing upon the health of the normal person, but a great deal to do with his physical comfort and convenience and not a little to do with his peace of mind. * * * Objects may be offensive to the eye as well as to the nose or ear * * * Why, then, should the government not interpose to protect from annoyance this most valuable of man’s senses as readily as to protect him from offensive noises and smells?
“* * * It is quite natural for people to protest against this indiscriminate and wholesale use of the landscape by advertisers and the intrusion of tradesmen upon their hours of leisure and relaxaton from work. Outdoor life must lose much of its charm and pleasure if this form of advertising is permitted to continue unhampered until it converts the streets and highways into veritable canyons through which the world must travel in going to work or in search of outdoor pleasure.
6 Í * # *
“ * * * If the police power may be exercised to encourage a healthy social and economic condition in the country, and if the comfort and convenience of the people are included within those subjects, everything which encroaches upon such territory is *438 amenable to the police power. A source of annoyance and irritation to the public does not minister to the comfort and convenience of the public. And we are of the opinion that the prevailing sentiment is manifestly against the erection of billboards which are offensive to the sight.”
In.considering whether a proposed statute prohibiting billboards adjacent to a highway bears a real and substantial relation to the public welfare, the General Assembly may properly give weight not only to its effect in promoting public safety but also to its effect in promoting the comfort, convenience and peace of mind of those who use the highway, by removing annoying intrusions upon that use.
In enacting these statutes, the General Assembly determined that they do bear a real and substantial relationship to the public safety and general welfare. In our opinion, that determination was not clearly erroneous, and, therefore, it should not be disturbed. See Curtiss v. City of Cleveland, supra (170 Ohio St., 127).
Ghaster contends further that enactment of the statutes involved in the instant case is not authorized by the police power because those statutes are unreasonable and arbitrary. They are claimed to be such because they prohibit signs which advertise a product not sold on the property but permit point-of-purchasing advertising. It is argued that a sign involving the latter kind of advertising would be just as much a threat to highway safety as a sign involving the former kind of advertising.
Except in Central Outdoor Advertising Co. v. Village of Evendale (Hamilton County Common Pleas Court, 1954), 54 Ohio Opinions, 354, 124 N. E. (2d), 189, and in a dictum in Triborough Bridge & Tunnel Authority v. Crystal & Son (1956), 2 App. Div. (2d), 37, 153 N. Y. Supp. (2d), 387, such a contention and the arguments supporting it have been consistently rejected. Murphy, Inc., v. Town of Westport, supra (131 Conn., 292), 303, 304; General Outdoor Advertising Co., Inc., v. Department of Public Works, supra (289 Mass., 149), 211, 212; Kelbro, Inc., v. Myrick, Secy. of State, supra (113 Vt., 64), 70; Opinion of the Justices, supra (103 N. H., 269), 271; United Advertising Corp. v. Borough of Raritan (1952), 11 N. J., 144, 93 A. (2d), 362; *439 Railway Express Agency, Inc., v. New York (1949), 336 U. S., 106, 93 L. Ed., 533, 69 S. Ct., 463.
In onr opinion, a statute is neither unreasonable nor arbitrary because it prohibits signs which advertise a product not sold on the property but permits signs advertising products sold on the property.
Ghaster contends further that the statutes involved in the instant case are unconstitutional because they infringe the right of free speech. There is no merit to this contention. United Advertising Corp. v. Borough of Raritan, supra (11 N. J., 144); Valentine, Police Commr., v. Chrestensen (1942), 316 U. S., 52, 86 L. Ed., 1262, 62 S. Ct., 920.
Ghaster contends further that these statutes are unconstitutional because they contract away a part of the state’s legislative power.
We find nothing in these statutes which can, in any way, restrict the power of the General Assembly to either modify or repeal them at any time.
With respect to a similar argument it is stated in the opinion in Moore v. Ward, Commr. of Highways, supra ([Ky.], 377 S. W. [2d], 881), 885:
“It is suggested that the acceptance of a subsidy by the state as consideration for the agreement establishes that the commonwealth has bartered away its police power. The conclusion does not follow the premise. Assuming the subsidy was one of the incentives to the enactment of this law, this does not affect its validity. The courts are concerned with the product, not the motives which produced it. * * *
“The final answer to appellant’s argument on this point is that neither the provision in the statute before us nor the alleged agreement entered into relinquishes one iota of police power to the federal government. Had it subjected appellants to federal laws in this field, it would not necessarily have been invalid for that reason. * * * But we are not confronted with such a debatable situation. There is nothing in the Act or the agreement which delegates power. Appellants are subjected only to the police power exercised by the Kentucky Legislature, not that of the federal government. We must test this statute by determining whether it now impairs appellant’s constitu *440 tional rights, not by what induced or conditioned its passage or what may result from future revision.”
For the foregoing reasons, we are of the opinion that Sections 5516.01 to 5516.05 and 55.16.99, Revised Code, are valid and constitutional in their general application. This brings us to the question as to whether, as the Court of Appeals held, those statutes are unconstitutional in their application to the seven Ghaster billboards involved in the instant case.
All seven signs are visible to traffic on U. S. Route 30S, one is also visible to traffic on Interstate 75, two are visible also to traffic on Interstate 75 and on access roads leading thereto which are a part of the Interstate Highway System, and four are not visible to traffic on Interstate 75 but are to traffic on such access roads.
We can take judicial notice of the fact that, except for one familiar with the interchange, getting on or off of an interstate highway in the direction that a driver wants to go usually involves some difficulty. A mistake in turn can cause a driver considerable inconvenience, annoyance, delay and even danger. Thus, at an interchange on an interstate highway, billboards can be a considerable cause of distraction, annoyance, inconvenience and even danger to a driver. Hence, the relation between the public welfare and the prohibition of billboards adjacent to the interstate highway system is at least as real and substantial where such billboards are visible only on access roads at an interchange with an interstate highway as where they are visible at other points on the interstate highway system. In our opinion, there is nothing in the record in the instant case which would support a finding, as to any one of the seven Ghaster signs, of any fact that might justify a conclusion that, as to such sign, there was no real and substantial relation between the public welfare and prohibiting the maintenance of such sign.
Each of these signs was in existence before enactment of these statutes.. However, there is no evidence disclosing what loss Ghaster will suffer if compelled to remove them. There is nothing to indicate that they ever became fixtures so as to be a part of the real estate. They can apparently be used in other locations where their use will be lawful. See Benjamin *441 v. City of Columbus, supra (167 Ohio St., 103), 113, 114. There is nothing to indicate what expense would be involved in moving them to such locations. There is not even any evidence tending to prove what, if any, dollar loss Chaster will suffer if these statutes are enforced against these seven signs. Cf. paragraphs four and six of the syllabus of Curtiss v. City of Cleveland, supra (170 Ohio St., 127).
It may be that a zoning regulation may not interfere with an existing use of property. City of Akron v. Chapman, supra (160 Ohio St., 382). See Gibson v. City of Oberlin (1960), 171 Ohio St., 1, 167 N. E. (2d), 651; Stoner McCray System v. City of Des Moines (1956), 247 Iowa, 1313, 78 N. W. (2d), 843, 58 A. L. R. (2d), 1304. However, a general police regulation may. See City of Akron v. Klein (1960), 171 Ohio St., 207, 168 N. E. (2d), 564; Benjamin v. City of Columbus, supra (167 Ohio St., 103), 108, 116; St. Louis Poster Advertising Co. v. City of St. Louis (1919), 249 U. S., 269, 63 L. Ed., 599, 39 S. Ct., 274; Reinman v. City of Little Rock, supra (237 U. S., 171); Hadacheck v. Sebastian, Chief of Police, supra (239 U. S., 394).
The reason given for decisions protecting the continuation of nonconforming uses is that, except for its location in a particular zone, the nonconforming use would be lawful and not a nuisance. However, the statutes involved in the instant case make the use of land for billboard purposes within 660 feet of an interstate highway unlawful and a nuisance. Unlike in the zoning cases, their continued use for such purposes will not merely be a lawful use that does not conform with a zoning restriction but a use that is unlawful and a nuisance either in or out of any zoning district, except as specified in Section 5516.02(D), Revised Code.
In the opnion in Moore v. Ward, Commr. of Highways, supra ([Ky.], 377 S. W. [2d], 881), 885, it is stated:
“ * * * It is contended this is an ‘ ex post facto ’ law destroying vested property rights. The simple answer is that this Act does not impose a criminal penalty upon any person for any prior act, which is the essence of ‘ex post facto.’ * * * If appellants are complaining of retrospective or retroactive operation of the law, their position is likewise untenable. The Aet does not affect or impair rights existing prior to the date of its *442 enactment. To insist that private rights are immutable and once vested can never be changed is to ignore the precept that private right is always subordinate to public right asserted by the proper exercise of the police power. * * *”
Furthermore, as hereinbefore pointed out, the use prohibited by these statutes is in substance and effect a use of the public highway for advertising purposes. To hold that such a nonconforming use should be protected would in effect lead to the absurd result of recognizing such use, before its statutory prohibition, as creating a vested private property interest in the highway.
For the foregoing reasons, we are of the opinion that the prohibition against maintenance of billboards, provided by the statutes involved in the instant case, may be applied against signs in existence at the time of the enactment of those statutes.
Our conclusion is that there is no apparent reason in the record for not applying the valid provisions of these statutes so far as they prohibit the maintenance of the seven Ghaster signs involved in the instant case.
We believe that the reasons hereinbefore given for our conclusions undoubtedly will provide Ghaster with all the relief which it would receive from the declaratory judgment which it seeks.
The judgment of the Court of Appeals is, therefore, reversed, and the petition of Ghaster dismissed.

Judgment reversed.

Zimmerman, Matthias, Collier, Griffith, Herbert and Doyle, JJ., concur.
Collier, J., of the Fourth Appellate District, sitting by designation in the place and stead of O’Neill, J.
Doyle, J., of the Ninth Appellate District, sitting by designation in the place and stead of Gibson, J.